(136 So. 609)

**STATE v. PAGE.**

No. 31283.

July 17, 1931.

M. J. Allen and B. B. Purser, both of Amite, for appellant.

Percy Saint, Atty. Gen., Robert S. Ellis, Jr., Dist. Atty., of Amite, and Edward R. Schowalter, Asst. Atty. Gen., for the State.

O'NIELL, C. J.

Mrs. Sallie Page and Jesse Harris were indicted jointly for the murder of Mrs. Page's husband, E. F. Page. On motion of the district attorney a severance was granted, and Mrs. Page alone was tried. She was convicted of manslaughter and sentenced to imprisonment in the penitentiary, and has appealed. The record contains twenty-six bills of exception.

Bill No. 1 and No. 2 were reserved to the overruling of an objection to a question asked by the district attorney in the examining of some of the jurors on their voir dire. The question was whether the fact that the defendant on trial was a woman would be the cause of any bias or prejudice, either for or against her. The answer, invariably, was that the defendant's being a woman would make no difference—that a woman should be tried with the fairness and impartiality with which a man should be tried. The purpose of the question, manifestly, was to make assurance that the defendant's sex would not be the cause of any undue sympathy for her.

Our opinion is that the question was not an improper one.

■ Bill No. 3 was reserved to the overruling of a challenge of a juror for cause—the cause being that he had formed an opinion from discussions which he had heard of the homicide. The juror declared that the parties whom he had heard discussing the crime were not witnesses in the case; that the opinion which he had of the case would not influence him as a juror; and that he could and would put aside his opinion and be governed only by the law and the evidence, if he should serve on the jury. The judge's ruling, therefore, was correct.

Bill No. 4 was taken to the overruling of a challenge of a juror for cause. The cause stated was that the juror said he would require the defendant to prove her innocence before he would consent to acquit her. The fact, however, is that the juror was confused by the questions, and was interrupted by being challenged for cause before he had completed his answer, viz.: "She would have to prove * * *." Thereafter, in answer to questions propounded by the judge, the juror made it certain that he would not require the defendant to prove anything, and that he would not convict her unless the state proved that she was guilty, beyond a reasonable doubt. The judge's ruling was correct.

■ Bill No. 5 was reserved to the overruling of a motion of defendant's counsel to discharge the jury, and an objection to going on with the trial on Monday of the second week thereof. The ground for the motion was that one of the two judges in and for that judicial district was then holding a regular session of court in the parish of Tangipahoa— the district being composed of the parishes of Tangipahoa, Livingston, and St. Helena. The trial of the case was commenced on Saturday, the last day of a regular session of

court in Livingston parish, and, being unfinished on that day, was resumed on Monday of the next week; which was the day fixed for the beginning of a regular session of court in Tangipahoa parish. Counsel for the defendant contend that the court could not continue in session in Livingston parish while the court was regularly in session in Tangipahoa parish. They rely upon section 43 of article 7 of the Constitution 1921, viz.: "In each district composed of more than one parish, the judge shall sit alternately in each parish, as the public business may require." That provision in the Constitution was intended, primarily, to apply to the judicial districts composed of more than one parish and having only one judge; the purpose being to forbid the judge to give so much of his time and attention to the business of one parish as to neglect the business of another parish. There would be little or no advantage in having two district judges in a district composed of more than one parish if one judge could not hold court in one parish while the other judge holds court in another parish. The provisions of section 43 of article 7 of the Constitution 1921, which we have quoted, were contained in article 117 of the Constitution of 1898, and were carried into effect by Act No. 163 of 1898, p. 320, thus: "That in Districts composed of more than one parish the judge shall sit alternately in each parish and the sessions from one parish to the other, shall be continuous, provided that no session in any parish of a District shall be fixed for less than one week or more than three weeks, as the public business may require." Notwithstanding the limitation on the length of the sessions of court, it was held, in State ex rel. Webb v. De Baillon, Judge, 51 La. Ann. 788, 25 So. 648, that the judge could extend a session of court beyond the three weeks, and beyond the time fixed by an order or the rules of the court, if, in

his judgment, the public business required such an extension of a session of court in any parish. See, also, State v. Beatrice Kane, 173 La. 36, 136 So. 80, decided June 22, 1931. There is no merit in this bill of exception.

Bill No. 6 was taken to the overruling of a challenge of a juror for cause. The facts with regard to this bill are the same as the facts relating to bill No. 4. Our opinion is that the juror was competent.

■ Bill No. 7 was reserved to the overruling of an objection to a question asked by the district attorney in examining a juror on his voir dire. The question was whether the juror knew Jesse Harris, who had lived in the same house with Mr. and Mrs. Page, and who was jointly indicted with her for the murder of her husband. The objection urged was that the reference to Jesse Harris would prejudice the jury against her by suggesting that she and Jesse Harris had conspired to murder her husband, because of an illicit relation between her and Jesse Harris. We do not find that the question was suggestive of anything of the kind. The purpose was to ascertain whether the acquaintance of the juror with Jesse Harris was so intimate as to influence him in the rendering of a verdict in the prosecution of Mrs. Page. The juror answered that he knew a man named Jesse Harris, but did not know whether he was the party who was indicted for the murder of Page; and that, if the Jesse Harris whom he (the juror) knew was the man who was indicted for the murder of Page, the acquaintance would not influence him (the juror) one way or another, in the trial of the case. There is therefore no merit in this bill of exception.

■ Bill No. 8 was reserved to the overruling of a challenge of a tales juror for cause; the challenge being based upon the fact that

the tales juror resided in the ward in which the homicide was committed, and that the judge, on his own motion, had instructed the sheriff not to summons six other tales jurors who resided in that ward. The tales juror who was challenged for cause resided six miles from the scene of the homicide. The six other tales jurors residing in that ward, whom the judge instructed the sheriff not to summons, resided in the immediate vicinity of the crime. There is therefore no showing that the judge abused his discretion in eliminating only six of the seven tales jurors who resided in the ward in which the homicide was committed; and hence no merit in this bill of exception.

■■ Bill No. 9 was reserved to the overruling of an objection to the offering in evidence of a shotgun wad and a No. 6 shot, which the coroner testified he had removed from the body of the deceased. The objection was that the articles were not sufficiently identified as having been taken from the body of the deceased. The coroner testified positively that the wad and shot were extracted by him from the dead man's body, when he performed the autopsy; and that he had extracted only one of many shot, of the same size, merely to show the size of the shot which had caused the man's death. The purpose of the evidence, as we understand, was to show that the man was shot from close range. Our opinion is that the objects offered in evidence were admissible in connection with the coroner's testimony. He might have described the objects without offering them in evidence. There is no merit in this bill of exception.

■ Bill No. 10 was reserved to the overruling of an objection to a statement made by the coroner, as a witness for the state. The coroner identified the record which he had made of the testimony given by Mrs.

Page at the inquest. He was then asked whether she had made any other statement at the inquest; and he answered that she had merely interfered with the witnesses by trying to prompt them. Counsel for the defendant thereupon objected to the evidence on the ground that it was not responsive to the question. We agree with the district judge that the objection was not well founded.

▮ Bill No. 11 has reference to an objection to the coroner's testifying that Mrs. Page pretended to faint during the coroner's inquest. Counsel for the defendant refused to state the ground for his objection, and the judge properly overruled it. There is no merit in this bill.

▮ Bill No. 12 was reserved to the overruling of an objection to the coroner's testifying to statements made by Mrs. Page at the coroner's inquest, and to the offering of the record of her testimony given at the inquest. The record of the testimony and facts taken down by the stenographer and annexed to this bill is very meager, and does not disclose any error in the ruling complained of. All that the coroner said Mrs. Page had said at the coroner's inquest was that, about 11 or 11:30 on the night of the homicide, while she and her husband were in bed, she heard a noise outside of the house, and heard some one talking. It was not contended by counsel for Mrs. Page that the testimony which she gave, or any statement which she made, at the coroner's inquest, was not voluntary. If the statements were incriminating statements, they were admissible in evidence against her; and, if they were not incriminating, they were harmless. We do not find any merit in this bill of exception.

▮ Bill No. 13 was reserved to the overruling of an objection to the offering in evidence of two shotgun shells, which the coroner testified he had found at the residence

of the deceased on the night of the homicide. The objection was that the shells were not sufficiently identified. The coroner testified that they resembled the two shells which he had found at the residence of the deceased and which he had filed in the office of the clerk of court. The record does not show whether the clerk of court, as custodian of the shells, identified the two which were offered in evidence as being the same that were given to him by the coroner; nor does the record show that the identifying of the shells was a matter of any importance. As far as the record shows, the testimony of the coroner that he found two shotgun shells at the residence of the deceased like the two which were shown to him in court was sufficient, without the offering of the shells in evidence. We do not find any error in the judge's ruling.

▮ Bill No. 14 was reserved to the overruling of an objection to the offering of a shotgun in evidence. The objection was that the gun had not been identified. The coroner testified that it was one of two guns which he had found at the residence of the deceased on the night of the homicide, and which he had given to the sheriff, in the office of the clerk of court, and that he (the coroner) was certain that the gun which was offered in evidence was one of the two which he had found at the residence of the deceased, because the gun had been broken and patched in a peculiar way, which left no doubt about its identity. The objection to the evidence was not well founded.

▮▮ Bill No. 15 contains two complaints, neither of which is well founded. One of the objections had reference to the coroner's testifying that, as he was not a stenographer, he wrote down only the important parts of the testimony given by Mrs. Page at the inquest. That objection, of course, had

no merit. The other objection was to the form of a question propounded by the district attorney to the coroner. The coroner having testified that Mrs. Page had said that the shot which killed her husband came from the end of the porch, the district attorney asked: "Which end?" The coroner replied that Mrs. Page had said that the shot came from the end of the porch next to the chimney, being at the end which would be on the right side of a person entering the house. The attorney for the defendant did not explain what he meant by objecting to the "form" of the question. If he meant that the question was a "leading question," we do not agree with him. At any rate, we agree with the district judge that the objection was not well founded.

There is no bill of exception numbered 16. As Bill No. 17 appears to be the most important of them all, we leave it for the last.

■■■■ Bill No. 18 was reserved to a statement made by the judge during the trial; the objection being that the judge's statement was a comment on the facts. In ruling upon another objection made by defendant's counsel, concerning the effect which the fatal shot would have had if it had come from the south end of the porch or gallery, the judge said: "The gallery runs north and south," and immediately said to the jury: "I cannot comment on the testimony." Nevertheless, one of the attorneys for the defendant protested; and the judge promptly instructed the jury to disregard what he (the judge) had said. We do not believe that there was any harm in the judge's statement of the direction or location of the porch, because the jury had gone to the locus in quo, and knew of the direction or location of the porch on which the man was killed; but, if there was any harm in the judge's comment, it was removed by his instruction to the jury. There is no merit in this bill.

Bill No. 19 was reserved to the district attorney's asking a witness a question which the judge had ruled was not admissible, and which was not answered. The answer to the question would have been hearsay evidence. It is contended that the question itself was harmful, as suggesting an illicit relation between Mrs. Page and Jesse Harris; but, in fact, the question does not appear to have contained any such suggestion. There is no merit in this bill of exception.

■■■■ Bill No. 20 was reserved to the overruling of an objection to testimony showing that Jesse Harris was at a wake, at a neighbor's house, all night, except for about ten minutes, on the night of the homicide. The ground of the objection was merely that the evidence concerning the whereabouts of Jesse Harris could have no effect on the case—or, in other words, was irrelevant. The bill of exception does not disclose whether the evidence was relevant or irrelevant. Without a showing to the contrary, we presume from the judge's ruling that the testimony was relevant.

Bill No. 21 was reserved to the overruling of an objection to a question propounded by the district attorney to a witness for the defendant, on cross-examination. The question was whether the witness knew that the deceased (Page) had ordered Jesse Harris out of the Page home. The objection to the question was that it had no reference to the testimony which the witness had given for the defense. The record does not show that the question was not relevant to the testimony which the witness had given for the defense; besides which, the witness answered that she did not know. There is no merit in this bill of exception.

Bill No. 22 was reserved to the overruling of an objection to the persistent questioning by the district attorney of a fourteen-year old

daughter of Mr. and Mrs. Page, for the purpose of impeaching her testimony. She was a witness for her mother; and the cross-examination had reference to statements which she was supposed to have made to her half-brother, a son of the deceased, and much older than the child. She insisted that she did not remember having made any such statements to her half-brother, and finally said that she was sure that she had not made the statements. We agree with the district judge that the manner of questioning the child was not objectionable.

Bill No. 23 was reserved to the overruling of an objection to the testimony of the impeaching witness, referred to in bill No. 22. The objection urged was that the child, whose testimony was being impeached, had not denied that she had made the statements attributed to her. The record shows that she did deny having made the statements. Her testimony, therefore, was subject to impeachment.

Bill No. 24 was reserved to the overruling of an objection to the offering of certain evidence as evidence in rebuttal. The objection urged was that the evidence was not in rebuttal of any evidence offered by the defendant. The judge said, in overruling the objection, that the evidence did tend to rebut certain evidence which had been introduced by the defendant; and the record does not contradict the judge's statement. There is therefore no merit in this bill.

Bill No. 25 was reserved to the refusal of the judge to instruct the jury to disregard a statement made by the district attorney in his argument to the jury. The statement of the district attorney was that the testimony showed that the deceased, Page, had put Jesse Harris out of the Page house two or three times. The objection was that there was no such evidence in the record. The judge said,

in response to the request of the defendant's counsel for an instruction to the jury, that he (the judge) could not comment upon the evidence. If there was any testimony at all in the record to support the district attorney's statement, the judge was right in refusing to comment upon the evidence. But, even if there was no evidence at all in the record to support the district attorney's statement, and if, therefore, the judge should have instructed the jury to disregard the statement, we do not find that the error was harmful, or sufficiently serious to justify a setting aside of the verdict.

Bill No. 26 was reserved to the overruling of an objection to the district attorney's exhibiting to the jury, in his closing argument, a shotgun which had been introduced in evidence; the objection being that the gun was not then in the condition in which it was when it was introduced in evidence. The only difference in that respect was that the district attorney breached the gun when he exhibited it to the jury in his argument. There is no merit in this bill of exception.

Bill No. 27 was reserved to the overruling of the defendant's motion for a new trial. The motion was merely a reiteration of the objections which had been made during the trial.

Bill No. 17, as we have said, presents the only close question to be decided. A witness named Scivicque, for the state, being on cross-examination, testified as follows:

"Q. Did you see the coroner hold his inquest?

"A. Yes, sir.

"Q. Did you see Mr. Page's body?

"A. Yes, sir.

"Q. Did you see where the wound was?

"A. Yes, sir.

"Q. Where was it?

"A. Right in the back, up there (indicating), just to the left of the backbone. You want to know what I think about how far the muzzle of the gun was from his back when it was shot and caused the wound?"

Whereupon the attorney for the defendant objected to the witness' expressing his opinion; and the witness interrupted him by saying: "About eighteen inches; I don't think it was further than that." And the judge then said: "The court overrules the objection." To which ruling the attorney for the defendant objected and reserved a bill of exception.

It is stated in the bill of exception, and is not denied in the statement per curiam, that the question as to how far the muzzle of the gun was from the body of the deceased when the shot was fired had a considerable effect upon the question whether the defendant or some one else fired the fatal shot. We gather from the evidence attached to the bills of exception that the killing occurred late at night, perhaps between 11 and 12 o'clock; that the shot was fired when Page went out upon his porch; and that Mrs. Page was then the only person in the house. Her defense was that the shot was fired by some one outside of the house.

The writer of this opinion considers this bill of exception well founded, and is of the opinion that the defendant is therefore entitled to a new trial. A majority of the members of the court, however, are of the opinion that, if the judge erred in overruling the objection to Mr. Scivicque's expressing his opinion as to how far the muzzle of the gun was from the body of Mr. Page when the gun was fired, the error was not harmful or unjust. If the attorney for Mrs. Page had made the objection that the opinion expressed by Scivicque was not responsive to the question propounded to him, the objection should, and perhaps would, have been sustained. But that objection was not made. The majority of the members of the court therefore find this bill of exception not well founded.

The verdict and sentence are affirmed.