*119
 
 CLARK, Justice.
 
 *
 

 hWe exercise our supervisory authority in an expedited manner to determine whether the local rules for allotting non-capital criminal cases in the Fifteenth Judicial District violate the uniform rules for the allotment of cases, state statutes, or a criminal defendant’s constitutional rights. After review, we find the local rules at issue do not offend the uniform rules of allotment, statutes, or the constitutional rights due to a criminal defendant.
 

 FACTS AND PROCEDURAL HISTORY
 

 Scott Allen Cooper (“Cooper” or “defendant”) was charged on March 20, 2002, by amended bill of information as a principal to second degree murder in the Fifteenth Judicial District.
 
 [1]
 
 After a jury trial held October 28-31, 2002, the jury returned a unanimous verdict of guilty as charged.
 
 [2]
 
 On November 7, 2002, Cooper was sentenced to the mandatory term of life imprisonment without benefit of parole, [^probation, or suspension of sentence.
 
 [3]
 
 His conviction and sentence were affirmed on appeal; writs were denied in this court.
 
 [4]
 

 On January 30, 2007, the district court granted post-conviction relief, finding Cooper was denied a fair trial when testimony was introduced against him in violation of his right to confront the witnesses against him under
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The district court reversed Cooper’s conviction and sentence and ordered a new trial.
 
 [5]
 
 On October 31, 2007, the court of appeal denied the state’s writ seeking review of this decision in a 2-1 ruling.
 
 [6]
 
 The state failed to seek further review of this decision in this court.
 
 [7]
 
 The facts underlying the criminal charge against Cooper are not at issue herein and will not be discussed in this opinion.
 

 While awaiting retrial, Cooper filed a motion entitled “Motion to Recuse and for Random Allotment,” on January 10, 2010, challenging the method by which non-capital felony criminal cases are assigned in the Fifteenth Judicial District and seeking to recuse all of the judges of that district from hearing the matter.
 
 [8]
 
 The defendant contended that the manner by which non-capital felony matters are allotted violates the uniform rules for district courts, specifically Rule 14.0, as well as various provisions of statutory and constitutional law. Moreover, since the judges of the Fifteenth Judicial District themselves developed and voted on the allotment method,
 
 *120
 
 Cooper sought to recuse them from acting on his motion.
 

 |¾Although the trial court initially signed the order recusing all of the judges in the district from presiding over the defendant’s motion,
 
 [9]
 
 that order was later rescinded and treated as a motion to recuse the trial judge assigned to the case.
 
 [10]
 
 After the recusal motion was randomly allotted to another judge and considered, the recusal motion was denied as untimely.
 
 [11]
 
 Thereafter, the trial judge set for hearing the portion of the motion challenging the method for allotment of criminal cases.
 

 After a hearing held on August 13, 2010, during which the defense introduced into evidence the transcripts of hearings and documents submitted in other criminal cases from the Fifteenth Judicial District raising the same allotment issues,
 
 [12]
 
 the trial court issued a detailed, 14-page decision, on September 1, 2010, addressing each of the issues raised by the defendant, and concluding the allotment system of the Fifteenth Judicial District is valid under state law.
 
 [13]
 

 The defendant sought review of the trial court’s determination and filed a writ with the court of appeal. Without considering the record, on October 15, 2010, the court of appeal granted the writ and made the writ peremptory, finding the trial court erred in denying the defendant’s motion for random allotment. Further, the court of appeal held, without further explanation or analysis, the system for allocating non-capital criminal cases in the Fifteenth Judicial District violates the requirement in Rule 14.0 that such cases be randomly allotted. In addition, the court of appeal stayed the defendant’s retrial until such time as his case would be allotted to a judge in compliance with Rule 14.0; again, without any indication of how the current rules of |4allotment fail to comply with the uniform rules or a description of the manner in which such an allotment should be accomplished.
 
 [14]
 

 Fearing both the severe interruption of the orderly process of criminal prosecution in the Fifteenth Judicial District, should other criminal defendants likewise challenge the allotment system, and the validity of convictions obtained if the state proceeded with prosecutions, the state sought an emergency stay of the effect of the court of appeal’s ruling in this court. After consideration of the state’s application, and the importance of this challenge to the criminal case allotment system for the state and criminal defendants alike in the Fifteenth Judicial District, we granted the writ and set an expedited briefing and oral argument schedule to consider the issues raised.
 
 [15]
 

 JUDICIAL DISTRICT AND LOCAL RULE AT ISSUE
 

 In order to understand the claims raised in the defendant’s motion, we must describe the make-up of the Fifteenth Judicial District and the method for case allotment adopted by the majority of the district judges there, which became effective in January, 2010.
 

 The state constitution mandates the state be divided into judicial districts, each
 
 *121
 
 composed of at least one parish and served by at least one district judge. La. Const, art. 5, § 14. The Fifteenth Judicial District is composed of three contiguous parishes, namely Acadia, Lafayette and Vermilion. La. R.S. 13:477(15). The law provides that thirteen judges shall be elected from the various precincts in the district to serve in separate divisions of court.
 
 [16]
 
 The law additionally provides that each district court |smay adopt rules for the conduct of its business. La. R.S. 13:472. Pursuant to La. R.S. 13:319, “[ejach civil and criminal proceeding and each application for writs shall be randomly assigned by the clerk, subject to the direct supervision of the court.”
 

 The state constitution authorizes the state supreme court to exercise general supervisory jurisdiction over all other courts in the state, specifically conferring to the supreme court the power to establish procedural and administrative rules not in conflict with law. La. Const, art. 5, § 5(A). Acting under its constitutional authority, the Louisiana Supreme Court adopted uniform rules for the district courts “to govern interaction between the courts, counsel, and litigants, and to ensure the administration of justice in an efficient and effective manner.”
 
 [17]
 
 La. Dist. Ct. R. 1.0. These uniform rules are intended to supplement the Codes of Civil and Criminal Procedure. La. Dist. Ct. R. 1.0, Comment (a).
 

 Under the uniform rules, a district court by
 
 en banc
 
 order may adopt administrative rules governing internal operating procedures on topics not otherwise covered by the uniform rules. La. Dist. Ct. R. 1.0. These local rules are submitted by the judicial districts for inclusion in various appendices to the uniform rules.
 
 See
 
 La. Dist. Ct. R. 1.0, Comment (b); La. Dist. Ct. R. 1.3. The Louisiana Supreme Court additionally provided a method of construing these rules and the appendices in conjunction with existing law. A conflict between a uniform rule and legislation should be resolved by following the legislation. La. Dist. Ct. R. 1.0, Comment (a). A conflict between a uniform rule and an Appendix should be resolved by following the rule. La. Dist. Ct. R. 1.0, Comment (b).
 

 Under La. Dist. Ct. R. 3.1, courts may, by
 
 en banc
 
 order, divide into divisions or sections for the purpose of allotting matters within the court’s jurisdiction. For | (¡those district courts that have done so, the method for assigning judges to divisions or sections are indicated in Appendix 3.1. Appendix 3.1 shows that the Fifteenth Judicial District decided to allot criminal matters to eleven of its thirteen divisions.
 
 [18]
 
 Title III of the Louisiana Supreme Court Rules provide the “Rules for Criminal Proceedings in District Courts.” Rule 14.0 governs the allotment of criminal cases, and states in pertinent part, that the “clerk of court shall randomly allot all criminal cases, unless an exception is established by law or these Rules.” Rule 14.0 also states the method of random
 
 *122
 
 allotment is to be established by each district court.
 

 The defendant’s challenge to the case allotment system in the Fifteenth Judicial District arises from the judges’ amendment of their local administrative rule for the allotment of non-capital criminal cases, effective January 1, 2010. The rule for allotment of non-capital criminal cases, hereinafter the “2010 Plan,” instituted a system of allotment which can be generally described, as follows:
 
 [19]
 

 
 *123
 
 |7In Acadia Parish, three criminal tracks were established, being Tracks A-l, A-2 and A-3. For the first two years of the new system, those tracks would be filled by those divisions whose judges are elected entirely from precincts within Acadia Parish. The individual judges were assigned to these tracks by random draw.
 

 In Vermilion Parish, two criminal tracks were established, being Tracks V-l and V-2. For the first two years of this plan, the two divisions whose judges are elected exclusively from precincts within Vermilion Parish will occupy these two |spositions. The two divisions were assigned to these tracks by random draw.
 

 In Lafayette Parish, there are four criminal tracks, designated as Track 1, Track 2, Track 3 and Track 4, plus two juvenile tracks, designated as Juvenile 1 and Juvenile 2. By random draw, the six remaining divisions assigned to criminal duty are assigned to these tracks.
 

 Once the tracks were allotted to the individual judges in their divisions, the rules provide that non-capital felony cases will be assigned to those divisions or tracks based upon the date of the offense in Lafayette and Vermilion Parishes. Certain types of cases, like Issuing Worthless Checks and drug offenses, have special rules assigning them to particular tracks. The calendar is broken down into time periods, and any crime committed during a designated time period will be assigned to a designated track, on a rotating basis.
 

 In Acadia Parish, the operative date for allotment is the filing of the bill of information by the District Attorney’s Office. However, once the bill of information is filed, a computer randomly allots the case to one of the three tracks based upon a computer program operated by the Clerk of Court for Acadia Parish.
 

 If a defendant has a pending case in a track and commits a new offense resulting in new charges, the new charges, whether felony or misdemeanor, may, at the request of the state, be transferred to the felony track where charges are already pending.
 

 After the first two years of this system, there will be another random draw whereby all eleven judges available for criminal duty will be randomly assigned to a track, regardless of what parish that division is in.
 
 [20]
 

 These provisions are the parameters of the 2010 Plan which we will now [9discuss.
 

 LAW AND DISCUSSION
 

 The defendant’s motion challenged the 2010 Plan on a variety of grounds. Cooper contended the 2010 Plan failed to comply with La. Dist. Ct. R. 14.0 and violated both statutory and constitutional provisions. The trial court conducted an analysis of each of the grounds asserted; the court of appeal did not, issuing instead a blanket statement finding the 2010 Plan violated Rule 14.0’s requirement to randomly allot criminal cases. We will examine each of
 
 *124
 
 the defendant’s grounds for challenging the 2010 Plan.
 

 Court Rule Challenge
 

 La. Dist. Ct. R. 14.0 establishes the uniform rule for the allotment of criminal cases and provides in pertinent part:
 

 (a) The clerk of court shall randomly allot all criminal cases, unless an exception is established by law or these Rules. The method of random allotment established by each district court, or by each parish within a district, where applicable, is described in Appendix 14.0A....
 

 Cooper argues the 2010 Plan violates the rule’s mandate of random allotment by the clerk of court because certain types of criminal cases are assigned to particular tracks, and cases filed in certain parishes will be adjudicated, at least for the first two years of the 2010 Plan, in those parishes, instead of scattered throughout the district. Because the 2010 Plan instructs the three clerks of court where to assign the criminal cases, Cooper argues the 2010 Plan is anything but random.
 

 Cooper’s argument focuses on the first sentence of Rule 14.0, while ignoring the second sentence of the rule. While the uniform rule clearly authorizes the clerk of court to randomly allot the cases, the method of random allotment is to be established by the district court. Cooper’s insistence on the primacy of the responsibility of the clerk of court to randomly allot, over that of the district court to | Tnestablish the manner of allotment, is misplaced and erroneous.
 

 The proper allotment of a case for adjudication implicates due process concerns. This court, in
 
 State v. Simpson,
 
 551 So.2d 1308 (La.1989), set forth the due process requirements for the allotment of criminal cases in the context of a system whereby the state chose the presiding judge. In
 
 Simpson,
 
 we held:
 

 To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned.
 
 [21]
 

 Similarly, this court found a numerical rotation allotment procedure, in which any indictment or information filed by the district attorney is allotted to the “next judge up,” invites manipulation of allotments.
 
 State v. Reed,
 
 1995-0648 (La.4/28/95), 653 So.2d 1176. Synthesizing the rules of
 
 Simpson
 
 and
 
 Reed,
 
 we hold that a rotation or allotment system is not acceptable if the event which triggers application of the system is dependent upon an action taken by the district attorney.
 
 See State v. Huls,
 
 1995-0541 p. 7 (La.App. 1 Cir. 5/29/96), 676 So.2d 160, 167.
 

 In both Vermilion and Lafayette Parishes, the allotment of the criminal case is dependent upon the date of the offense. In Acadia Parish, the allotment of the criminal case is based on the filing of the bill of information by the district attorney; however, these cases are then randomly allotted using the clerk of court’s random allotment software.
 

 As found by the trial court, there is one circumstance provided for in the local rule which violates
 
 Simpson
 
 and the requirement of random allotment found in Rule 14.0. The provisions in the 2010 Plan which allow the state, at its election, to transfer a new felony or new misdemeanor to the same track where a defendant has |1Ta pending felony, violates
 
 Simpson
 
 and
 
 *125
 
 the requirement of random allotment because the state is allowed to pick the presiding judge. However, as concluded by the trial court, this circumstance is governed by Rule 14.1, which must be followed when there is a conflict between a uniform rule (here, Rule 14.1) and a local rule (as in the 2010 Plan). Rule 14.1 mandates that where a defendant has a pending felony, any new felony charge
 
 must be allotted to the division to which the pending felony was allotted.
 

 [22]
 

 In this regard, the 2010 Plan must fall before the mandatory requirement of Rule 14.1.
 
 [23]
 

 In discussing the parameters of the 2010 Plan, the trial court made these factual findings:
 

 A majority of the judges elected to the 15th JDC established a method of random allotment that randomly allots cases to trac[k]s, and then allots judges to trac[k]s to preside over those cases for a specified period of time, and at the end of that time, there will be another random allotment of judges to trae[k]s. 11 of the 13 elected judges shall be annually randomly allotted to any trac[k], in any parish. However, because the majority anticipated each Clerk of Court may have unique challenges with this method of random allotment, the majority decided the initial term would be two years, and the judges with offices in the same parish as the Clerk of Court, would be randomly assigned to the trac[k]s of that parish. The majority thought this process would streamline the communications between the clerks and the judges.
 
 [24]
 

 |12We agree with the trial court and find factual support for these determinations in the record.
 
 [25]
 
 The record contains the minutes of the judges’ meetings of the Fifteenth Judicial District, wherein they discussed the 2010 Plan. Most notably, the meetings held on April 21, 2009, May 13, 2009 and August 31, 2009 are included in the record.
 
 [26]
 
 Although various aspects of the 2010 Plan were discussed, and there
 
 *126
 
 was not unanimous agreement among the judges as to' its provisions, a majority of the Fifteenth Judicial District judges adopted the 2010 Plan as provided in Appendix 14.0A.
 
 [27]
 
 The record also contains the “Order Amending Local Rules of Court,” amending then-Appendix 11, now Appendix 14.0A, with the 2010 Plan.
 
 [28]
 

 Submitted as a supplement to the defendant’s writ application in the court of appeal is a transcript of a hearing held on September 15, 2009, originating from several criminal cases consolidated for the purpose of hearing a similar motion challenging the random allotment system in the Fifteenth Judicial District. Testifying at that hearing was Judge Castle, who participated in the formation of the 2010 Plan. She explained the rationale behind the 2010 Plan was to increase the judges’ efficiency and to cover all of the criminal matters in all three parishes.
 
 [29]
 
 Building on 1 wan already-established system of tracks, the new system allows the judges to increase efficiency by retaining cases for a longer period of time and by permitting special settings.
 
 [30]
 
 Judge Castle found the problem of comparing caseloads in the three parishes for the development of the new system was compounded by the fact that the three clerks of court counted cases in different ways — “it was just hard for us to look at the numbers and compare apples to apples.”
 
 [31]
 
 Consequently, Judge Castle testified the Fifteenth Judicial District judges anticipate re-examining the system at the end of the initial two-year period and making adjustments in resources, if necessary.
 
 [32]
 

 As the trial court found, “[tjhis was a new, different, and complicated method of allotting cases.”
 
 [33]
 
 Our inquiry here is not to determine whether the district judges selected the “best” or “easiest” method of allotting criminal cases. Our focus here is only on whether the 2010 Plan which was adopted violates the law. We have established a framework in the uniform rules whereby district judges may tailor their case allotment plans in ways that will take into consideration the unique characteristics of their judicial district and the resources available to them. In our goal of ensuring due process is provided to litigants, we have never required an allotment system which was purely random.
 

 Judge Castle’s testimony explains why the judges of the Fifteenth Judicial District selected the initial assignment of judges to home-parish tracks, where possible:
 

 Initially, we thought it was best for everybody to stay in their home parish i[n] that we realize that this is a change and it’s going to take some tweaking. So we thought it would be helpful for those
 
 *127
 
 judges to be in the parishes where their offices are and they’re there most of the 114time to try to deal with [the 2010 Plan].
 
 [34]
 

 Similarly, the initial two-year time period was selected because that was the minimum length of time the judges believed they needed to give intensive examination to their particular dockets, to get the new systems in place, and to work with the clerks of court.
 
 [35]
 
 The judges were not in error in taking into account considerations of judicial efficiency and costs in developing the 2010 Plan, as long as their method of case allotment did not otherwise violate the law. Nor should anyone lose sight of the fact that these so-called “geographical assignments” are only for the first two years of the 2010 Plan’s operation. Thereafter, the judges will be assigned to the tracks district-wide on a random basis.
 

 In the minutes of the judges’ meetings on April 21, 2009 and May 13, 2009, there are indications of discussions that the six judges presiding over the tracks in Lafayette Parish would be allowed to trade off individual track assignments among themselves if both judges were agreeable to the switch.
 
 [36]
 
 From these discussions, the defendant raises the fear that while there are the written rules of criminal case allotment as found in Appendix 14.0A, there may exist unwritten rules, which would allow the judges to swap cases at will.
 

 The record shows the defendant’s fears of indiscriminate case swapping among the judges are unfounded. Judge Castle testified that, although there were initial discussions among the judges to swap track assignments when allotted, and not individual cases, “nobody ever swapped.”
 
 [37]
 
 There is, thus, no factual basis for the defendant’s contentions.
 

 11fiMoreover, any transfer of already-allotted individual criminal cases would be governed by La. Dist. Ct. R. 14.3, which provides for the transfer of an allotted case for good cause or by written consent of all parties, including the state, the defense, and both the transferring judge and the receiving judge.
 
 [38]
 
 In the absence of consent, a show cause hearing must be held, with the burden upon the moving party. Consequently, a transfer of an allotted case in violation of this uniform rule would be clear to all, and if handled improperly, would be subject to review.
 

 Finally, the defendant contends the 2010 Plan defeats a main purpose of a random allotment system, which the defense states “is to insure [sic] that one judge presides over the case until its conclusion.”
 
 [39]
 
 While the one judge/one case arrangement might be a laudable goal of a case allotment system, that circumstance
 
 *128
 
 has never been a requirement of random allotment. We recognize the impracticality of such a requirement—judges get sick, take vacation, have conflicts within their own dockets, resign, or are elected to a different bench. All of these circumstances often result in a case being assigned to another judge for adjudication. The fact that more than one judge handles aspects of any one criminal case does not, in and of itself, prejudice the criminal defendant.
 
 [40]
 
 As will be discussed further in the analysis of the | ^defendant’s due process argument, a criminal defendant does not have a right to have his case heard by a particular judge.
 
 [41]
 

 In conclusion, and with the one exception noted above, we find the 2010 Plan adopted by the majority of the district judges of the Fifteenth Judicial District does not violate Rule 14.0 of the Supreme Court Rules for District Courts.
 

 Statutory Challenge
 

 The defendant contends the 2010 Plan violates the provisions of La. R.S. 13:502, which, according to the defendant, requires each judge to sit alternately in each parish in a multi-parish district, and to fix sessions of court in each parish by court order. We find the defendant misconstrues the meaning of La. R.S. 13:502.
 

 La. R.S. 18:502 provides:
 

 § 502. Alternate sittings in different parishes; order fixing dates
 

 A. In districts composed of more than one parish the judge shall sit alternately in each parish and the session from one parish to the other, shall be continuous. No session in any parish of a district shall be fixed for less than one week or more than three weeks, as the public business may require. The district judge shall fix a date for the holding of the sessions in each parish by an order of court which shall be entered in the minutes of the court and published at least three times in the official journal of each parish. After the date is fixed, no change shall be made in the order within less than one year thereafter.
 

 B. Sessions of the Twenty-Third Judicial District Court held in Ascension Parish may be held in Gonzales as well as in Donaldsonville.
 

 In
 
 State v. Gutweiler,
 
 2006-2596 p. 9 (La.4/8/08), 979 So.2d 469, 476, we stated: “Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the Legislature.” Consequently, “when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent |17of the Legislature.”
 
 Id.
 

 In the statute at issue, the legislature’s directive to district judges in multi-parish judicial districts “to sit alternately in each parish” would, we find, lead to absurd consequences. We do not believe the legislature intended for district judges to engage in some sort of judicial version of “musical chairs” for no purpose. Thus, we must determine what was the purpose the legislature intended to accomplish by its enactment of this statute. “The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter, and
 
 *129
 
 placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it.”
 
 Gutweiler,
 
 2006-2596 p. 10, 979 So.2d at 476.
 

 .This statute is found in Part 11 (“Ses-sions and Terms of Court”) of Chapter 4 (“District Courts-Orleans Parish Excepted”) of Title 13 (“Courts and Judicial Procedure”) of the Louisiana Revised Statutes. The source for the language of the current statute is Article 117 of the Louisiana Constitution of 1898, enacted during a time when a court’s jurisdiction depended on the proper declaration of a court session or term of court, and when certain types of cases could only be heard at specified times during the year.
 
 [42]
 
 The provisions of Art. 117 were carried out in Act lisNo. 168 of 1898, and provided for the setting of sessions of court and the proper manner to do so.
 
 [43]
 
 The provisions of Article 117 were changed in the Louisiana Constitution of 1879, but were reinstated in the Louisiana Constitution of 1913. In the Louisiana Constitution of 1921, the
 
 *130
 
 provisions are found in Article 7, § 43.
 
 [44]
 

 The cases interpreting the language now found in La. R.S. 13:502 are dated from the time of the constitutional provision’s enactment in 1898 until the mid 1930’s. There are no more recent cases interpreting this statute. However, in
 
 State v. Page,
 
 173 La. 279, 284-285, 136 So. 609 (1931), this court interpreted the meaning of the then-constitutional provision:
 

 That provision in the Constitution was intended, primarily, to apply to the judicial districts composed of more than one parish and having only one judge; the purpose being to forbid the judge to give so much of his time and attention to the business of one parish as to neglect the business of another parish. There would be little or no advantage in having two district judges in a district composed of more than one parish |1flif one judge could not hold court in one parish while the other judge holds court in another parish. The provisions of section 43 of article 7 of the Constitution 1921, which we have quoted, were contained in article 117 of the Constitution of 1898, and were carried into effect by Act No. 163 of 1898, p. 320, thus: ‘That in Districts composed of more than one parish the Judge shall sit alternately in each parish and the sessions from one parish to the other, shall be continuous, provided that no session in any parish of a District shall be fixed for less than one week or more than three weeks, as the public business may require.’ Notwithstanding the limitation on the length of the sessions of court, it was held, in
 
 State ex rel. Webb v. Debaillon, Judge,
 
 51 La. Ann. 788, 25 So. 648, that the judge could extend a session of court beyond the three weeks, and beyond the time fixed by an order or the rules of the court, if, in his judgment, the public business required such an extension of a session of court in any parish.
 
 See, also, State v. Beatrice Kane
 
 (La.Sup.) 173 La. 36, 136 So. 80, decided June 22, 1931.
 

 In the earlier case of
 
 State v. Freddy,
 
 118 La. 468, 43 So. 53, 54 (1907), in interpreting both Art. 117 of the 1898 Louisiana Constitution, and Act No. 163 of 1898, we said:
 

 The judge is not only authorized to hold court at any time in any parish of his district, when public interest may require it, but, also, whenever he thinks proper to order the commission to draw additional jurors for service during any session of the court or during a continuous session.
 

 We agree with our past Brethren the statute is meant to ensure none of the parishes in a multi-parish judicial district is ignored, and all of the district judges have the authority to hold court in any parish within the district. However, we also find that the authority to sit in any parish within a district must factor in such pragmatic considerations as courtroom and office space, funding, and scheduling. For these pragmatic reasons, as well as the due process concerns inherent in the scheduling of criminal cases, the court has provided a framework in the uniform rules whereby individual judicial districts may develop a plan to randomly allot cases in a way which works best for that district. We find the 2010 Plan does not violate the provisions of La. R.S. 13:502, properly understood.
 

 
 *131
 
 Even if the statute meant what the defendant contends,
 
 ie.
 
 that all of the judges |2nin the Fifteenth Judicial District should sit in all of the parishes in the district, we find the evidence shows they are doing so.
 
 [45]
 
 Included in the defendant’s exhibits is a court calendar for 2010.
 
 [46]
 
 This exhibit clearly shows that each division of the Fifteenth Judicial District holds court in each of the three parishes comprising the judicial district throughout the year. As will be discussed
 
 infra,
 
 the fact that the district judges are handling specific types of cases in certain parishes has no effect on our analysis.
 

 Constitutional Challenge
 

 The defendant raises several constitutional challenges to the 2010 Plan. We will examine each challenge in turn.
 

 Due Process
 

 Cooper asserts both the federal and state constitutions guarantee a criminal defendant the due process of law. . He argues there is no rational basis for failing to randomly allot this case as he has requested, i.e. by a totally random system, and the failure to do so is a violation of due process.
 
 [47]
 

 In
 
 Simpson,
 
 we stated that “[d]ue process of law requires fundamental fairness,
 
 ie.,
 
 a fair trial in a fair tribunal.”
 
 [48]
 
 However, due process does not entitle a criminal defendant to selection of the manner in which the judge of that tribunal is designated. A criminal defendant does not have the right to have his case heard by a particular judge, does not have the right to have his judge selected by a random draw, and is not denied due process as a result of an error in a particular judge’s selection unless he |2ican point to some resulting prejudice.
 
 [49]
 
 Here, there is no suggestion of the district attorney’s complicity in the process leading to the assignment of this case to the trial judge and no basis for the inference that the state was in any way involved in that process. In addition, Cooper has not suggested in what way he believes the trial judge allotted his case is partial or biased. Cooper has failed to show in what way the manner in which his case was allotted resulted in a tribunal less than fair and impartial.
 
 [50]
 

 Equal Protection
 

 The defendant contends the 2010 Plan violates his constitutional right to equal protection of the law. Specifically, Cooper complains that felony cases are not randomly allotted in the same way that civil cases and capital cases are allotted in the Fifteenth Judicial District. He claims there is no rational basis for the distinction in the manner in which these types of cases are allotted.
 
 [51]
 

 
 *132
 
 The Fourteenth Amendment to the United States Constitution provides that “[n]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws.” The Equal Protection Clause requires public bodies and institutions to treat similarly situated individuals in a similar manner. Conversely, treatment of dissimilarly situated persons in a dissimilar manner does not violate the Equal Protection Clause.
 

 La. Const, art. 1, § 3 provides:
 

 No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably | ^discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
 

 In
 
 State v. Granger,
 
 2007-2285 p. 9-13 (La.5/21/08), 982 So.2d 779, 787-790, this court discussed the various review standards applicable to the examination of a statute or rule to determine whether a violation of equal protection has occurred. As a criminal defendant charged with a felony, Cooper is not a member of any suspect class which would require a heightened review under either the federal or state constitutions. Instead, under federal law, the allotment rule at issue would pass equal protection muster under a minimal scrutiny test if its provisions bear a rational relation to a legitimate state interest.
 
 Granger,
 
 2007-2285 p. 10, 982 So.2d at 787. Under state law, Cooper has the stringent burden of demonstrating that the classification does not suitably further any appropriate governmental interest.
 
 Id.,
 
 2007-2285 p. 13, 982 So.2d at 789.
 

 Cooper fails under either test. The doctrine of equal protection ensures that similarly situated individuals are similarly treated. A criminal defendant with a felony charge is simply not the same as a litigant in a civil case, or even a criminal defendant facing a capital charge.
 
 [52]
 
 Consequently, the Equal Protection Clause is not implicated when dissimilarly situated individuals are treated differently. Even if Cooper could be considered as similarly situated, as a general litigant before the court, the trial court, in a separate section of his ruling, described the legitimate and appropriate state interest in allotting criminal felony cases differently:
 

 In civil cases, the litigants pay in advance the cost of summoning potential júrors to the courthouse; this is not true in criminal cases. There are no costs paid in advance in criminal cases. When a court issues an order to empanel a jury venire for a criminal case, that order 1 ^imposes a significant cost on the parish government, the sheriff, and the clerk of court. The sheriff and clerk are able to recoup a significant portion of those costs from the parish government. Much of the costs associated with the prosecution and defense of criminal cases is imposed on the local parish government and as a result, the parish government must simply absorb those costs in criminal cases. It is not unreasonable for the judges of the 15th JDC to consider those costs when establishing the court calendar. There is no doubt that a method of allotting criminal cases in
 
 *133
 
 each parish to each of either [of] the 11 judges who do not preside over dockets of domestic cases which include child custody issues, or all 13 of the elected judges, would dramatically increase the cost to each of the parish governments. * * ⅜
 

 The 15th Judicial District judges must allot sufficient time to criminal matters to avoid delay and creation of a backlog of cases. Because a speedy trial is a constitutional right, prosecutors and judges must avoid institutional delays.
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See
 
 Hadley v. State,
 
 66 Wis.2d 350, 225 N.W.3d 461, 78 ALR 3d 273 (1975). The judges of the 15th JDC must decide how to apportion the available time among all of the types of cases that they preside over, not allow criminal cases to prescribe, and remain sensitive to the costs that the criminal justice system is imposing on state and local governments. Judges are required to be stewards of public funds. That is the responsibility of the judges. Defense attorneys do not have those responsibilities. Many people may have ideas and recommendations on how to do this apportionment of time and other resources; however, this is a decision that the judges are ethically and constitutionally required to make.
 
 [53]
 

 We hold Cooper has failed to show a violation of his equal protection rights.
 

 Power of District Court Judge
 

 Cooper asserts the 2010 Plan impinges on the judicial independence of the judges in the numerical minority, demotes a judge elected with general jurisdiction to one with specialized jurisdiction and, in effect, creates a specialized criminal court within the Fifteenth Judicial District. We find the defendant’s arguments to be unpersuasive and factually inaccurate.
 
 [54]
 

 | j>4As previously stated, the state constitution mandates the state be divided into judicial districts. La. Const, art. 5, § 14. Thirteen judges are elected from the various precincts in this district to serve in separate divisions of court.
 
 [55]
 
 La. Const, art. 5, § 16 provides in pertinent part
 
 “...
 
 a district court shall have original jurisdiction of all civil and criminal matters.” We made clear in
 
 Piper v. Olinde Hardware & Supply Co., Inc.,
 
 288 So.2d 626, 629 (La.1974), that “each judicial district constitutes a single court, and the creation [of] different divisions does not operate to sever a single district court into multiple courts.”
 
 Piper
 
 has been held to stand for the proposition “that the statutory term ‘court’ does not reach each of the internal divisions that make up a district court, but rather embraces the district court as a whole.”
 
 [56]
 
 We agree.
 

 A district court judge elected with general authority has the power to
 
 *134
 
 adjudicate all civil and criminal matters within his district, but there is no requirement that the district court judge exercise the entirety of his authority at all times and in all parishes in the district. The fact that certain types of cases are assigned to other divisions does not result in a district court judge losing any aspect of his general jurisdiction. The trial court presented an excellent example to illustrate this point, although discussed in a different section of his ruling.
 
 [57]
 
 The trial court noted a judge is authorized to perform marriage ceremonies within his district. However, if he does not perform a single marriage ceremony for the entirety of his term of office, it cannot be said that the judge thereby lost some of his authority simply because that aspect of his authority was not exercised. In the same manner, the fact that certain types of cases, be they civil or criminal or a particular subset of either, are allotted to a different ^division of court has no effect whatsoever on the general jurisdiction of a district court judge.
 

 Nor do we see how a random allotment system, which divides up the judicial district into tracks and assigns judges to those tracks in a random manner, impacts the judicial independence of any of the district court judges, even those who may not agree with the allotment system. There is no indication, and certainly no evidence, that any pressure has been brought to bear on the numerical minority judges to adjudicate their cases in any particular way. Consequently, the district court judges are free to exercise their judicial discretion over the cases allotted to them.
 

 Finally, we find the 2010 Plan does not create a specialized criminal court. The random allotment plan does not create a court at all, as the only “court” being analyzed here is the Fifteenth Judicial District. The 2010 Plan merely provides a mechanism whereby the non-capital criminal cases are allotted to particular divisions within the district court.
 

 The defendant separately contends the 2010 Plan has the effect of violating the federal Voting Rights Act, 42 U.S.C. § 1973. Cooper asserts two of the thirteen judicial divisions were created to increase racial minority representation on the Fifteenth Judicial District bench. He argues “... a majority of the 13 judges can negate the effect of the Voting Rights Act by marginalizing the newly elected minority judges. A majority of the judges can vote, whether intentionally or unintentionally, to place the minority judges in a subservient role by limiting them to presiding over certain specialized courts designated by vote of the majority.” As the discussion above makes plain, there is no diminution in the general jurisdiction of a district court judge by operation of the 2010 Plan. Assuming Cooper has standing and could bring a claim under the Voting Rights Act in this criminal proceeding, he 12fifails to establish any injury.
 
 [58]
 

 Separation of Powers
 

 Cooper contends the provisions of La. R.S. 13:587.4 serve as an unconstitutional delegation of legislative authority to the district courts, and act as an unconstitutional legislative infringement on the supervisory jurisdiction of the Supreme Court.
 

 
 *135
 
 Initially, we note La. Const, art. 5, § 15(A) confers upon the legislature the power to establish new judgeships for district courts and new trial courts of limited or specialized jurisdiction. However, La. R.S. 13:587.4, which provides a procedure where by a majority of judges in a judicial district may designate certain divisions or sections as a specialized division or section, is inapplicable here.
 
 [59]
 
 The court rule establishing the 2010 Plan, signed by the Chief Judge of the Fifteenth Judicial District, and admitted into evidence,
 
 [60]
 
 shows that the court rule was created pursuant to the authority of La. C.C.P. art. 193, La. R.S. 13:472 and Rule 3.1 of the Louisiana Uniform Rules for District Courts, and not La. R.S. 13:587.4.
 
 [61]
 
 Although La. R.S. 12713:587.4 is a statute which authorizes a majority of district court judges to designate certain divisions or sections within the district as a specialized division of court, the statute was not relied on here.
 
 [62]
 

 Insofar as the defendant contests the fact that the legislature enacts laws which impacts the judicial system, we find no violation of the separation of powers, or encroachment on the supervisory jurisdiction of this court in this matter. As we stated in
 
 Safety Net for Abused Persons v. Segura,
 
 1996-1978 p. 3-4 (La.4/8/97), 692 So.2d 1038, 1041:
 

 The separation of powers doctrine is found in Article II of the Louisiana Constitution. La. Const, art. II, § 2 prohibits any one of the three branches of government from exercising power belonging to another branch. La. Const, art. II, §§ 1 and 2 establish the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge.
 
 Konrad v. Jefferson Parish Council,
 
 520 So.2d 393, 397 (La.1988);
 
 Singer Hutner
 
 
 *136
 

 Levine Seeman & Stuart v. Louisiana State Bar Association,
 
 378 So.2d 423, 426 (La.1979). Under the doctrine of inherent powers, courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts. The inherent powers of the judicial branch necessarily encompass the authority to administer the business of the courts.
 
 Konrad,
 
 520 So.2d at 397.
 

 We recognize that crystal clear distinctions among the branches of government are not always possible or desirable. The practical aspects of governing require flexibility and make some overlapping inevitable. Consequently, this court will cooperate with the legislative and executive branches of government unless it interferes with the Ineffective administration of justice. With respect to legislation that has an impact on the judicial system, this court will uphold legislative acts passed in aid of the judiciary’s inherent power, but will strike down statutes which tend to impede or frustrate its authority.
 
 Singer,
 
 378 So.2d at 426;
 
 Louisiana State Bar
 
 Association
 
 v. Connolly,
 
 201 La. 342, 355, 9 So.2d 582, 586 (1942).
 

 The fact that we are reviewing the challenges brought against the 2010 Plan is proof positive we have not surrendered our supervisory authority over the Fifteenth Judicial District in this matter. After reviewing same, we find no infringement on our supervisory authority has occurred.
 

 DECREE
 

 For the foregoing reasons, we reverse the judgment of the court of appeal and, like the district court, find the method of allotment of non-capital criminal cases in the Fifteenth Judicial District does not offend the principle of random allotment, the uniform rules for district courts, statutory law or the constitutional rights of a criminal defendant. In keeping with the expedited nature of this proceeding, we order that an application seeking rehearing of this matter must be filed no later than 12:00 noon on Monday, November 22, 2010.
 

 REVERSED AND REMANDED.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . The original indictment charging Cooper as a principal to first degree murder was returned by the grand jury on November 15, 2000. Vol. 1, p. 55-56. The record in this matter consists of three volumes and numerous exhibits. Due to the expedited nature of this proceeding in this court, most of the documents are loosely organized in
 
 in globo
 
 exhibits. Reference will be made to the record by the volume and page number; documents will be identified by their title and page number within the document itself, where applicable.
 

 [2]
 

 . Vol. 1, p. 14-26, 126-128.
 

 [3]
 

 . Vol. 1, p. 27.
 

 [4]
 

 .
 
 See State v. Cooper,
 
 2003-0161 (La.App. 3 Cir. 12/23/03), 862 So.2d 512,
 
 writ denied
 
 2004-0236 (La.6/4/04), 876 So.2d 74.
 

 [5]
 

 . Vol. 1, p. 223-225.
 

 [6]
 

 . Vol. 1, p. 235.
 

 [7]
 

 . The record indicates the defendant is not currently in custody, but is out on bond.
 
 See
 
 Vol. 1, p. 33.
 

 [8]
 

 . Vol. 2, p. 304-330 and 346-385.
 

 [9]
 

 . Vol. 2, p. 331.
 

 [10]
 

 . Vol. 2, p. 333.
 

 [11]
 

 . Vol. 2, p. 334-336.
 

 [12]
 

 . Vol. 2, p. 410-500, Vol. 3, p. 501-515.
 

 [13]
 

 . Vol. 2, p. 389-402.
 

 [14]
 

 . Vol. 3, p. 521-522;
 
 State v. Cooper,
 
 2010-1195 (La.App. 3 Cir. 10/14/10).
 

 [15]
 

 .
 
 State v. Cooper,
 
 2010-2344 (La.10/27/10), -So.3d-, 2010 WL 5093065.
 

 [16]
 

 . La. R.S. 13:621.15 provides: "[t)he Fifteenth Judicial District shall have thirteen judges." La. R.S. 13:582 provides: "[tjhere shall be separate and distinct divisions of the various district courts having two or more duly elected or appointed judges, for the purpose of nomination and election of judges only.”
 

 [17]
 

 . These rules are entitled "Rules for Louisiana District Courts and Juvenile Courts and Numbering System for Louisiana Family and Domestic Relations Procedures” and will be referred to as the "Louisiana Supreme Court Rules” or the "uniform rules.”
 

 [18]
 

 . "Criminal matters shall be allotted to Divisions A, B, C, D, E, F, G, I, J, K, and L in the manner set forth in Appendix 14.0A.”
 

 [19]
 

 . The amended allotment plan, as found in Appendix 14.0A, formerly Appendix 11, is as follows:
 

 "ALLOTMENT OF NON-CAPITAL CRIMINAL CASES
 

 LAFAYETTE PARISH
 

 [juvenile matters]
 

 [[Image here]]
 

 All adult felony criminal cases in Lafayette Parish shall continue to be allotted to Tracks 1, 2, 3, and 4 based upon date of offense. A single judge shall be assigned to each track and will, therefore, be allotted the cases in that track. All cases in which the offender is charged with Issuing Worthless checks shall be allotted to Track 5 which shall be consolidated with Track 4 and allotted to that Track. Felony drug cases will continue to be allotted to Track One or Three. All felony drug offenses committed on the 1st through the 10th of the month are allotted to Track 3. All drug offenses committed on the 11th of the month through the last day of the month are allotted to Track 1. Track 1 shall be allotted drug cases only. However, if an incident results in a drug offense, along with other felony offenses, those non-drug felonies alleged to have been committed at the same time and as part of the same incident will follow the felony drug case and are allotted in the drug rotation to Track 1 or Track 3, as set forth above. The allotment of non-drug, non-IWC felonies will continue to be based upon date of offense, with a rotation which runs on a Sunday through Saturday schedule. Under the current system, which will continue, beginning with January 3, 2010, the rotation is as follows:
 

 January 3-January 9, 2010-Track 3
 

 January 10-January 16, 2010-Track 4
 

 January 17-January 23, 2010-Track 2
 

 The allotment system will continue utilizing this three week rotation.
 

 If a Defendant is simultaneously charged with multiple offenses committed over the course of more than one date, the date of commission of the earliest offense shall govern the allotment. If a Defendant has a pending case in a track and commits a new offense resulting in new charges, those new charges, whether felony or misdemeanor, may, at the request of the State, be transferred to the felony track where charges are already pending.
 

 [traffic/wildlife & fisheries/misdemeanors/therapeutic drug court]
 

 VERMILION PARISH
 

 All adult felony criminal cases in Vermilion Parish shall be randomly allotted to tracks V-l or V-2. Cases shall be randomly allotted based upon date of offense. A single judge shall be assigned to each track and will, therefore, be allotted the case in that track. If a Defendant has a pending case in a track and commits a new offense, resulting in new charges, those new charges, whether felony or misdemeanor, may, at the request of the State, be transferred to the track where charges are already pending. The judges assigned to Tracks V-l and V-2 will also preside over all misdemeanor and juvenile matters in Vermilion parish.
 

 ACADIA PARISH
 

 All adult felony criminal cases in Acadia Parish shall be randomly allotted to Tracks A-l, A-2 or A-3, using the clerk of court’s random allotment software. Cases shall be randomly allotted at the time of filing of the bill of information. A single judge shall be assigned to each track and will, therefore, be allotted the cases in that track. If a Defendant has a pending case in a track and commits a new offense, resulting in new Charges, those new charges may, whether felony or misdemeanor, at the request of the State, be transferred to the track where charges are already pending. The judges assigned to Tracks A-l, A-2 and A-3 will also preside over all misdemeanor and juvenile matters in Acadia parish.
 

 For the Court terms of January, 2010 through December 2011, the assignment of divisions of court to preside over each track shall be as follows:
 

 Divisions A, F, and J shall be assigned to Tracks A-l, A-2 and A-3, respectively. Di
 
 *123
 
 visions C and G shall be assigned to Tracks V-l and V-2, respectively. Lafayette Tracks Juvenile 1, Juvenile 2, Track 1, Track 2, Track 3 and Track 4 shall be assigned to Divisions B, D, E, I, K or L via random drawing. The assignment of the three Lafayette divisions which will handle misdemeanor cases in a given year shall initially be by random drawing. Thereafter, the assignment of a Lafayette division to a misdemeanor week will fall every other year.
 

 For the Court term beginning January, 2012, and every year thereafter, there will be a random reassignment of all divisions listed in the Section entitled "Allotment Non-Capital Criminal Cases.”
 

 [20]
 

 . Two of the thirteen judges preside over family and domestic matters exclusively.
 

 [21]
 

 .
 
 Simpson,
 
 551 So.2d at 1304.
 

 [22]
 

 . La. Dist. Ct. R. 14.1 provides:
 

 Rule 14.1. Allotment-Defendant With More Than One Felony Case
 

 (a) Unless a different method is set forth in Appendix 14.1, if a defendant has a felony case pending and previously allotted, any new felony arrest for that defendant shall be allotted to the division to which the pending felony was allotted. This “felonies-following-felonies” rule also applies to any pending felony arrests for a co-defendant with a new arrest and billed as a co-defendant.
 

 (b) For purposes of this Rule, a felony case remains pending until any of the following events has occurred:
 

 (1) a bill of information or indictment is filed or amended, reducing the case to a misdemeanor;
 

 (2) the District Attorney’s Office enters a nolle prosequi in a case; or
 

 (3) there is an adjudication of guilty by plea or trial.
 

 [23]
 

 . In order to ensure the 2010 Plan conforms with the law, the judges of the Fifteenth Judicial District should amend the local rule in this respect.
 

 [24]
 

 . Vol. 2, p. 391.
 

 [25]
 

 . The trial court found the 2010 Plan unclear as to the allotment of misdemeanor and juvenile matters in Acadia and Vermilion Parishes. However, reading those sections
 
 in pari materia
 
 with the other provisions, the trial court concluded the majority intended the clerk of court for Vermilion Parish to randomly allot misdemeanor and juvenile matters based on the date of the offense to the two tracks established there, and the clerk of court for Acadia Parish to use the random allotment software to randomly allot misdemeanor and juvenile matters to the three tracks established in that parish. Vol. 2, p. 392. We agree that the provisions of the 2010 Plan should be read in this manner.
 

 [26]
 

 .
 
 See
 
 Defendant’s Exhibit #5
 
 in globo
 
 (April 21, 2009 and May 13, 2009 minutes),
 
 and
 
 Defendant’s Exhibit #6
 
 in globo
 
 (August 31, 2009 minutes).
 

 [27]
 

 . The defendant raises arguments with regard to the judges’ use of proxy votes in the judges’ meetings. We decline the opportunity to micro-manage the internal administrative procedures utilized by the district court judges in their era
 
 banc
 
 meetings, noting the record is devoid of any complaint of any of the judges whose proxies were voted at these meetings.
 

 [28]
 

 . See Defendant’s Exhibit #4
 
 in globo,
 
 Order dated September 1, 2009, and signed by Judge Marilyn C. Castle, on behalf of and at the direction of Judge Glennon Everett, Chief Judge. Also included in this exhibit is the Amendment Form which transmitted the Order from the Fifteenth Judicial District Judges to the Louisiana Supreme Court's Office of the Judicial Administrator.
 

 [29]
 

 . Supplement, Transcript of September 13, 2009 hearing, marked p. 529.
 

 [30]
 

 .
 
 Id.,
 
 marked p. 533.
 

 [31]
 

 .
 
 Id.,
 
 marked p. 534.
 

 [32]
 

 .
 
 Id.
 

 [33]
 

 . Vol. 2, p. 391.
 

 [34]
 

 . Supplement, Transcript of September 13, 2009 hearing, marked p. 566.
 

 [35]
 

 .
 
 Id..,
 
 marked p. 567.
 

 [36]
 

 . See Defendant's Exhibit # 5
 
 in globo.
 

 [37]
 

 . Supplement, Transcript of September 13, 2009 hearing, marked p. 538 and 539.
 

 [38]
 

 . La. Dist. Ct. R. 14.3 provides:
 

 Rule 14.3 Transfer of Allotted Case
 

 Any case that has been allotted may be transferred from one division to another division for good cause, or by written consent of all parties, including the state, the defense, and the court. Consent transfers shall be by written order signed by both the transferring judge and the receiving judge.
 

 If all parties do not consent, a show cause hearing shall be held, and the burden to show cause will be upon the moving party. The hearing shall be before a judge ad hoc, selected in the manner set forth for motions to recuse under Louisiana Code of Criminal Procedure Article 675.
 

 [39]
 

 . Vol. 2, p. 318.
 

 [40]
 

 . This practical reality was noted in
 
 Simpson,
 
 where we stated: "Of course, random allotment does not prevent the court from appointing another judge to try a case when the judge to whom the case falls is ill or incapacitated.”
 
 Id..,
 
 551 So.2d at 1305 n. 6.
 

 [41]
 

 .
 
 See Sinito v. United States,
 
 750 F.2d 512, 515 (6th Cir.1984).
 

 [42]
 

 . La. Const. 1898, art. 117 provided:
 

 Art. 117. District Courts shall hold continuous sessions during ten months of the year. In districts composed of more than one parish, the judge shall sit alternately in each parish, as the public business may require. Until otherwise provided by law, judgments shall be signed after three days from the rendition thereof, and become ex-ecutory ten days from such signing.
 

 The General Assembly shall provide for the drawing of juries for the trial of civil and criminal cases. A grand jury of twelve, nine of whom must concur to find an indictment, shall be empanelled in each parish twice in each year, and shall remain in office until a succeeding grand jury is em-panelled: except in the Parish of Cameron, in which at least one grand jury shall be empanelled each year. The district judges shall have authority to try at any time all misdemeanors and when the jury is waived all cases not necessarily punishable at hard labor, and to receive pleas of guilty in cases less than capital.
 

 The provisions of this article shall go into effect upon the adoption of this Constitution.
 

 [43]
 

 . Act No. 163 of 1898, as described in
 
 State v. Debailion,
 
 51 La. Ann. 788, 791-792, 25 So. 648, 649 (1899), provided:
 

 Act No. 163 of 1898, referred to in the pleadings, was approved July 14, 1898. It is entitled: ‘An act relative to sessions of district courts throughout the state, the parish of Orleans excepted, and to carry out the provisions of article 117 of the constitution; to confer on district judges certain powers in relation to the conduct of business before said courts and regulating the practice and proceedings thereof.’ Its second section provides that ‘in districts composed of more than one parish the judge shall sit alternately in each parish and the sessions from one parish to the other parish shall be continuous, provided that no session in any parish of a district shall be fixed for less than one week, or more than three weeks as the public business may require. The district judge shall, by an order of court, fix a date for the holding of the sessions in each parish, which order shall be entered on the minutes of the court, and published at least three times in the official journal in each parish, and, after being so fixed, no change shall be made in such order within less than one year thereafter.’ Its third section provides that it is the intent and meaning of article 117 of the constitution that district courts shall always be open, and the proceedings held to be in open court while the judge is on the bench, and that the fixing of sessions in districts composed of more than one parish shall not affect the authority or duty of the court to sit at any time in any of the parishes when the public interests may require it. Article 117 of the constitution, which it is the declared object of Act No. 163 to carry into effect, directs that district courts shall hold continuous sessions for ten months of the year for districts composed of more than one parish, and the judge shall sit alternately in each parish as the public business may require.
 

 See also State v. Hincey (In re Hincey),
 
 129 La. 636, 56 So. 620, 621 (1911).
 

 [44]
 

 . La. Const. 1921, art. 7, § 43 provided in pertinent part:
 

 Section 43. District Courts, the Civil District Court and the Criminal District Court for the parish of Orleans excepted, shall hold continuous sessions during ten months of the year.... In each district composed of more than one parish, the judge shall sit alternately in each parish, as the public business may require....
 

 [45]
 

 . The trial court found similarly, finding there was no evidence in the record that the judges were not sitting alternately in each parish. Vol. 2, p. 398.
 

 [46]
 

 . Defendant’s Exhibit #6, 2010 Court Calendar.
 

 [47]
 

 . Vol. 2, p. 325-326.
 

 [48]
 

 .
 
 See Turner v. State of Louisiana,
 
 379 U.S. 466, 85 S.Ct 546, 13 L.Ed.2d 424 (1965) and
 
 State v. Mejia,
 
 250 La. 518, 197 So.2d 73 (1967).
 

 [49]
 

 .
 
 See Sinito v. United States,
 
 750 F.2d 512, 515 (6th Cir.1984), and cases cited therein.
 

 [50]
 

 . The trial court similarly found no due process violation in the random allotment plan. The trial court found that the 2010 Plan may not be fair to all of the judges, but it does provide the process that is due to criminal defendants. The trial court concluded the plan may not be collegial, but the 2010 Plan "is not for that reason impermissible." Vol. 2, p. 401.
 

 [51]
 

 . Vol. 2, p.325.
 

 [52]
 

 . There are too many special procedures and rules inherent in a capital case to find one similar to a regular felony criminal case.
 

 [53]
 

 . Vol. 2, p. 392-393.
 

 [54]
 

 . Additionally, we find Cooper has no standing to offer these arguments. Since we find no diminution of power or authority resulting in the operation of the 2010 Plan, we would be hard pressed to find an individual judge would have standing to raise these issues. However, in the interest of judicial efficiency, and to foreclose future argument on these matters, we have addressed them.
 

 [55]
 

 . La. R.S. 13:621.15 provides: "[t]he Fifteenth Judicial District shall have thirteen judges.” La. R.S. 13:582 provides: ”[t]here shall be separate and distinct divisions of the various district courts having two or more duly elected or appointed judges, for the purpose of nomination and election of judges only.”
 

 [56]
 

 . See Carter v. Jones,
 
 2007-0297 p. 4 (La. App. 3 Cir. 10/17/07), 967 So.2d 615, 619,
 
 writ denied,
 
 2007-2234 (La. 1/25/08), 973 So.2d 756.
 

 [57]
 

 . Vol. 2, p. 394.
 

 [58]
 

 . The trial court ruled a criminal case is not the proper vehicle for the adjudication of a claim brought under the Voting Rights Act. Vol. 2, p. 401-402. We find it unnecessary to make that determination, considering the defendant’s failure to even minimally state an iniurv
 

 [59]
 

 . La. R.S. 13:587.4 provides in pertinent part:
 

 § 587.4. District courts; specialized divisions or sections; subject matter
 

 A. Respecting seniority and the requirement that all cases be assigned randomly within multi-judge divisions or sections, the judges of any judicial district court, by rule adopted by a majority vote of the judges sitting en banc, may designate certain divisions or sections of the court as a specialized division or section having criminal, civil, drug court, driving while intoxicated court, mental health court, juvenile, violent crimes or homicides, or other specialized subject matter jurisdiction.
 

 [60]
 

 .
 
 See
 
 Defense Exhibit
 
 # Ain globo.
 

 [61]
 

 . La. R.S. 13:472 authorizes district courts to adopt rules for the conduct of business before them and provides for the manner in which these rules should be promulgated and published.
 
 See
 
 p. 120-21,
 
 infra.
 
 Rule 3.1 of the Louisiana Rules for District Courts is previously discussed at p. 121-22,
 
 infra.
 
 La. C.C.P. art. 193 provides:
 

 Art. 193. Power to adopt local rules; publication
 

 A court may adopt rules for the conduct of judicial business before it, including those governing matters of practice and procedure which are not contrary to the rules provided by law. When a court has more than one judge, its rules shall be adopted or amended by a majority of the judges thereof, sitting en banc.
 

 The rules may provide that the court may call a special session of court during vacation, and that any action, proceeding, or matter otherwise required by law to be tried or heard in open court during the regular session may be tried or heard during the special session.
 

 The rules shall be entered on the minutes of the court. Rules adopted by an appellate court shall be published in the manner which the court considers most effective and practicable. Rules adopted by a district court shall be printed in pamphlet form, and a copy shall be furnished on request to any attorney licensed to practice law in this state.
 

 [62]
 

 . The trial court erred in finding La. R.S. 13:587.4 was an unconstitutional violation of the separation of powers in this case. Vol. 2, p. 398-399.