# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                      NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**BY KNOLL, J.**:

2015-KK-1473    STATE OF LOUISIANA v. ERIK NUNEZ  C/W  STATE OF LOUISIANA v.
    C/W    BRANDON LICCIARDI C/W
2015-KK-1486    STATE OF LOUISIANA v. TYRONE BROWN (Parish of Orleans)(Allotment
System of Criminal Cases)

For the foregoing reasons, we reverse the decisions of the Court
of Appeal granting defendants' motions to quash allotment and
ordering re-allotment  in these cases, and we reinstate the trial
Judges' denials of said motions. Otherwise, the decisions of the
Court of Appeal are affirmed. These cases are remanded for
further proceedings consistent with this opinion.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.

WEIMER,J.,dissents with reasons.
HUGHES,J.,dissents with reasons.
CRICHTON, J., additionally concurs and assigns reasons.

01/27/2016

SUPREME COURT OF LOUISIANA

NO. 2015-KK-1473

STATE OF LOUISIANA VERSUS ERIK NUNEZ

CONSOLIDATED WITH

STATE OF LOUISIANA VERSUS BRANDON LICCIARDI

CONSOLIDATED WITH

NO. 2015-KK-1486

STATE OF LOUISIANA VERSUS TYRONE BROWN

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

KNOLL, J.

This writ concerns the allotment system of criminal cases in Orleans Parish Criminal District Court when the date of the offense is uncertain. We granted writs in this consolidated matter to determine whether La. Dist. Ct. Rule 14.0 or the defendants' due process rights are violated by the case allotment system of the Orleans Parish Criminal District Court, which randomly assigns cases to different District Judges based on the first date of the first alleged offense. Defendants assert the procedure in place at the time of the allotment of their cases is unconstitutional as applied to multi-count, multi-defendant cases, or to cases in which the date of offense is uncertain and in which the prosecutor has discretion to allege the earliest date of a charged offense. For the following reasons, we find the Orleans Parish Criminal District Court's allotment process is sufficiently random and does not vest the District Attorney with the power to choose the Judge to whom a particular case is assigned, instead tethering judicial assignment to the defendant's conduct. Thus, we find defendants' case allotments meet constitutional due process

requirements absent a showing of actual manipulation or prejudice to defendants. As defendants have presented no evidence of actual manipulation or prejudice, we reverse the rulings of the Court of Appeal granting the motions to quash allotment and ordering re-allotment, reinstate the trial courts' denials of the defendants' motions to quash and/or for re-allotment, and remand these cases to their respective trial courts for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

*Erik Nunez and Brian Liccardi*

Erik Nunez, Brian Liccardi, and Darren Sharper are the named defendants in a nine-count indictment returned by a grand jury on December 12, 2014.[1] Erik Nunez is charged with two counts of aggravated rape on September 23, 2013, and one count of obstruction of justice occurring between September 23, 2012, and February 28, 2013. Brandon Liccardi is charged with one count of human trafficking occuring between July 1, 2012, and August 31, 2012; one count of aggravated rape on February 2, 2013; and two more counts of human trafficking of individuals on August 31, 2013, and September 23, 2013. Nunez and Liccardi are not codefendants on any charge in the indictment. Upon indictment, the case was allotted to Section "I" of Orleans Parish Criminal District Court based upon the July 1, 2012 date, as detailed below.

Prior to the indictment, Nunez had been arrested on the two counts of aggravated rape later included in the indictment and his bond had been set at $400,000. After the indictment was returned, Nunez appeared for arraignment on December 14, 2014, pleading not guilty on all counts, and the trial Judge raised his bond to $2,500,000. Later on the same day, Nunez filed a motion to recuse, to re-allot, and to vacate prior order fixing bail. The case was re-allotted to Section "D"

---

[1] Darren Sharper pleaded guilty on June 15, 2015; thus, he is not a party in the present matter.

for a hearing on the motions, where the trial court denied the motion to recuse and transferred the case back to Section "I."

On January 5, 2015, Nunez filed a motion to quash allotment and declare the current system unconstitutional, a request for re-allotment, and a motion to vacate the prior order fixing bail. Louisiana District Court Rule 14.0 requires random allotment of criminal cases unless an exception is established by law or the rules, in accordance with the method described in Appendix 14.0A of the La. Dist. Ct. Rules. The method of allotment provided in Appendix 14.0A for Orleans Parish Criminal District Court at the time of Nunez and Liccardi's case allotment provided in pertinent part:

> The Clerk will assign daily, randomly, and by allotment among the Sections having felony jurisdiction all felony indictments, bills of information charging felony offenses and appeals from Municipal Court and Traffic Courts and other pleadings shall be allotted among Sections A through L and the Magistrate Section. This allotment shall be conducted by the Clerk and shall be open to the public. The District Attorney shall be notified of the allotment. A computer generated random allotment system be and is hereby implemented by the Clerk's Office for all cases filed with the Clerk of the Orleans Parish Criminal District Court.

La. Dist. Ct. Rules Appendix 14.0A (as amended effective April 4, 2014). Although Nunez acknowledged the official method of allotment fulfills the random allotment requirement, he asserted the actual allotment procedure violates the requirements of both due process and La. Dist. Ct. Rule 14.0.

At the hearing on the motions, defense counsel called Keith Johnson, the office manager for the Clerk of Court's office, to testify to the Orleans Parish Criminal District Court allotment procedure. According to Johnson, the Clerk's office receives a daily email from the Judicial Administrator's office containing a computer-generated allotment of a Judge for first, second, and third class felony cases and a second Judge allotted for fourth class cases. Each day's allotment is recorded on a publicly available calendar. When the Clerk's office receives a bill

3

of indictment or information, Johnson looks at the date of the offense indicated and refers to the calendar to find out what section of court has been allotted for that date. Johnson further testified he uses the "first date of the first offense" to determine the pertinent date where multiple offenses are charged. Use of the first date of the oldest offense is, however, unwritten procedure and not part of the local rule according to Johnson's testimony.[2]

---

[2] In November of 2015, defendants' counsel moved to supplement the record before this Court with a unauthenticated document entitled "New Case Allotment Process" which, on its face, purports to have been approved *en banc* by the Orleans Parish Criminal District Court on February 4, 2011, along with an apparent email from the Court's Deputy Judicial Administrator, Shannon Sims, stating the rule has been in effect since February 4, 2011. The substance of the "New Case Allotment Process" document is substantially similar (but not identical) to the current version of the Orleans Parish Criminal District Court local rule on allotment, as amended by court order and effective August 13, 2015, which provides as follows:

1. The Clerk will assign daily, randomly, and by allotment among the Sections having felony jurisdiction all felony indictments, bills of information charging felony and misdemeanor offenses. ~~and appeals~~ Appeals from Municipal and Traffic Courts~~and~~ other pleadings shall be allotted among Sections A through L and the Magistrate Section. A computer generated random allotment system is hereby implemented by the Clerk's Office for all cases filed with the Clerk of the Orleans Parish Criminal District Court.

   a. The allotment process shall randomly assign one of the twelve sections of court as the allotment court for the day. For allotment purposes, the offense date will be compared to the calendar. The section of the court assigned to the date that corresponds to the offense date will receive the case when it is filed with the Clerk of Court. In the event there are multiple offense dates for a case(s)/defendant(s), the highest class offense with the oldest date of offense will control for allotment purposes. **If the specific date of the offense is not known, then the date of the first report of the offense will be used.**

   b. The District Attorney shall be required to identify clearly the offense date with the case filing, so that allotments may be easily audited. If the number of cases allotted to sections of the court varies by more than five percent between the sections receiving the most and the fewest cases, then the court will review the allotment process and make any modifications or adjustments that may be required to correct the problem.

   ….

   ~~This allotment shall be conducted by the Clerk and shall be open to the public.~~ The District Attorney shall be notified of the allotment which shall be published daily to the public. ~~A computer generated random allotment system be and is hereby implemented by the Clerk's Office for all cases Filed with the Clerk of the Orleans Parish Criminal District Court.~~

2015 LOUISIANA COURT ORDER 0115 (C.O. 0115), amending La. Dist. Ct. Rules Appendices, Appendix 14.A, Criminal District Court Orleans Parish (underline indicates text addition, ~~strikethrough~~ indicates deletion). *(continued on next page)*

After the hearing, the trial Judge denied Nunez's motion to quash allotment and request to re-allot, finding the allotment procedure was constitutional and Nunez presented no evidence the State manipulated the allotment system in this case. The Judge also denied Nunez's motion to vacate the prior order fixing bail. Nunez timely filed applications for supervisory writs. The Fourth Circuit Court of Appeal ordered oral arguments be heard on the issue of the allotment procedure and invited the Orleans Parish Criminal District Court to provide a per curiam explaining the allotment procedure.

Brandon Liccardi filed his motion to quash the indictment and/or strike the allotment system as unconstitutional and order re-allotment, which was denied by the trial Judge with the same ruling and reasons assigned for the denial of Nunez's motion. Liccardi subsequently filed for supervisory writs along with a request for expedited consideration and consolidation with Nunez's writ. The Fourth Circuit heard oral arguments *en banc* for both defendants' applications on May 26, 2015.

*Tyrone Brown*

On November 19, 2014, Tyrone Brown was charged by bill of indictment with six counts for offenses allegedly occurring between August 1, 2012, and

---

*(cont.)* Defendants assert this email from Sharon Simms indicates a rule substantially similar to the one above— which also requires the **first date of report of the offense** to dictate the date used for allotment where the date of the offense is unknown— has been in effect since February 4, 2011. Thus, they argue the cases at issue were improperly allotted under the wrong procedure, further suggesting possible manipulation. We disagree. We take judicial notice of Court Order 0115 amending the District Court Appendices, Criminal District Court Orleans Parish, which states in its text it was adopted by the Court *en banc* August 13, 2015, and made effective the same date. La. Code Evid. art. 202(B)(d). Prior to August 13, 2015, the pertinent local rule was the one at issue in this case, as quoted above on page 2.

We hereby deny defendants' motion to supplement the record, as we find the purported unpublished rule is of no moment in this case. Until this late point, neither the Orleans Parish Criminal District Court nor any party to this litigation has disputed the allocation procedure which was in effect at the pertinent time, as testified to by a deputy clerk of Criminal District Court called by defendants at trial. Defendants do not have a right to allocation as provided in an unpublished internal court policy. Furthermore, even if the procedure recounted by the deputy clerk were followed in error in these cases, this Court stated in *State v. Cooper* a defendant "is not denied due process as a result of an error in a particular judge's selection unless he can point to some resulting prejudice." *State v. Cooper*, 10-2344, p.20 (La. 11/16/10), 50 So.3d 115, 131 (citing *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984), and cases cited therein). As demonstrated below, the defendants have failed to demonstrate any prejudice in this case.

September 19, 2014: two counts of aggravated rape; two counts of indecent behavior with a juvenile under the age of seventeen with greater than two years difference between the age of the juvenile and that of the defendant; and two counts of sexual battery. The case was allotted to Section "F" pursuant to the court's allotment calendar; Brown appeared for arraignment and entered a plea of not guilty. On January 5, 2015, Brown filed a motion to quash the indictment for improper allotment, arguing the date range beginning with August 1, 2012, had been selected arbitrarily. After a contradictory hearing, the trial Judge denied the motion to quash and Brown appealed. The Fourth Circuit ordered the case be presented for oral argument to the Court *en banc* on May 26, 2015.

*Fourth Circuit Opinions*

The Fourth Circuit issued opinions for both cases on July 6, 2015. In *State v. Nunez*, the Court of Appeal held the District Court erred in denying the defendants' motions to quash the allotment, finding Louisiana Supreme Court jurisprudence contains no explicit requirement for a showing of actual manipulation of challenged allotment procedures. *State v. Nunez,* 15-0164, p. 12-13 (La. App. 4 Cir. 7/6/15), 174 So.3d 105, 113, *writ granted,* 15-1473 (La. 10/2/15), -- So.3d --. The Court of Appeal further found the procedure used in Orleans Parish Criminal Court violates the principles of due process as well as La. Dist. Ct. Rule 14.0, because the allotment procedure "gives the District Attorney the ability to manipulate the allotment of cases by alleging certain dates in the indictment." *Id.* Thus, the Court reversed the trial Judge's denial of defendants' motions to quash allotment and remanded the matter for the adoption of allotment procedures in compliance with the law and jurisprudence and for re-allotment in accordance with the new procedures. *Id.* at 114. Judge Bonin, dissenting, found there was no legal basis for ordering the re-allotment of the case, as defendants did not show the District Attorney intentionally selected or even attempted to select the trial Judge.

*Id.* Judge Bonin also cited the *en banc* per curiam the Judges of the Criminal District Court filed with the Fourth Circuit, which stated the current allotment procedure had been adopted after a period of trial-and-error and upon consultation with the National Center for State Courts. *Id.* at 116.

In Tyrone Brown's case, the Court of Appeal held "the Orleans Parish Criminal District Court allotment system violates the principles of due process set forth in *Simpson* because under the circumstances presented in defendant's case, the District Attorney had the ability to choose the date of the offense, which dictates the section of court to which the case is allotted." *State v. Brown,* 15-0122, p. 10 (La. App. 4 Cir. 7/6/15), 174 So.3d 95, 101, *writ granted,* 15-1486 (La. 10/2/15), -- So.3d --. The Court of Appeal affirmed the trial Judge's denial of Brown's motion to quash the indictment, but granted the writ in part, remanding the matter to the Orleans Parish Criminal District Court for "the adoption of allotment procedures that comport with the jurisprudence discussed above" and for re-allotment of the defendant's case under the newly-adopted procedure. *Id.*

## LAW AND ANALYSIS

These consolidated cases turn on whether the lower courts legally erred in their interpretation and application of the pertinent due process principles and Louisiana Court Rules; thus, the cases are subject to this Court's *de novo* review. As this Court stated in its per curiam on rehearing in *State v. Simpson,* 551 So.2d 1303 (La. 1989), "[d]ue process of law requires fundamental fairness, *i.e.,* a fair trial in a fair tribunal." *Id., citing Turner v. Louisiana,* 379 U.S. 466, 85 S.C.t 546, 13 L.Ed.2d 424 (1965); *State v Mejia,* 250 La. 518, 197 So.2d 73 (1967). This Court, beginning in *Simpson,* has recognized the allotment of criminal cases among Judges for trial implicates due process concerns. In order to meet due process requirements, the Court in *Simpson* held "capital and other felony cases must be allotted for trial… on a random or rotating basis or under some other procedure

7

adopted by the court **which does not vest the district attorney with power to choose the judge to whom a particular case is assigned**." *Id.* at 1304 (emphasis added). The issue in the present case is whether the Orleans Parish Criminal District Court's allotment procedure violates this rule, articulated in *Simpson* and further expounded in later cases. Notably, in *Simpson*, defense counsel and the District Attorney **stipulated** the State had the discretion to choose Judges to preside over criminal cases, and the Court found this system to be "facially unfair." *Id.* Similarly, this Court in *State v. Payne,* 556 So.2d 47 (La. 1990), found modified local rules were not in compliance with the rule articulated in *Simpson* because the "district attorney **may still have the power** to select judges by making unchecked motions for certain trial dates." (Emphasis added).

In *State v. Reed*, 95-0648 (La. 4/28/95), 653 So.2d 1176 (per curiam)*,* the allotment procedure in question was a "numerical rotation in which any indictment or information filed by the district attorney was allotted to the 'next judge up,'" and the Court's one page per curiam noted "[s]uch a system not only invites manipulation of allotments, but **also violates the court rule** which requires random allotment of each case." *Id.* (emphasis added). Thus, the Court held "[r]elator is entitled to **enforcement of the court rule without proving** *actual manipulation* in his particular case" *Id.* (emphasis added). Although defendants and the Fourth Circuit rely heavily on *Reed* for the proposition defendants need not prove *actual manipulation* in order to successfully challenge an allotment procedure, we find *Reed* to be clearly distinguishable from the present case. As in *Simpson* and *Payne*, the Court in *Reed* found the system in violation of the court rule requiring random allotment because it vested in the District Attorney power to select Judges by controlling the order of filings; thus, no showing of actual manipulation was required. In contrast, we find the record reflects the District

8

Attorney's actions do not drive the selection of Judges in the system at issue; rather, the defendant's conduct drives the date of offense listed on the indictment.

The rule articulated in *Simpson* was also applied in another short per curiam issued by this Court in *State v. Rideau,* 01-3146, p. 1 (La. 11/29/01), 802 So.2d 1280 (per curiam) (Knoll, J., dissenting). "Because the District Attorney has the ability, by process of elimination, to know the final judge in the pool to be assigned the next numbered capital case, and because the district attorney has the right to assign the next numbered capital case when indictments are handed down," the Court found the system violated the principles adopted in *Simpson. Id.*[3] Again in *Rideau*, the system struck down by this Court was one in which the District Attorney could routinely control the assignment of Judges, here, by way of controlling the numbering of cases.

As noted by Judge Bonin in his dissent in *Nunez*, this Court declined extreme application of the principles articulated in *Rideau* in *State v. Broussard,* 03-1340 (La. 6/26/03), 852 So.2d 978 (per curiam). The allotment at issue in *Broussard* was one at which Judges were assigned randomly, but a Judge was deleted from the random allotment after he or she was assigned a case and until all Judges had been assigned one case. *See id.* The District Attorney could, therefore, determine which of the Judges remained available. However, in this particular case only one Judge had been deleted as of the time of the defendant's allotment, so the

---

[3] Justice Knoll, however, dissented from *Rideau,* stating:

> The majority fails to recognize in its zealous effort to micro-manage the criminal process in Calcasieu Parish that *Simpson* requires that the District Attorney not have the "power to choose the judge." *Simpson,* 551 So.2d at 1304. Here, the ball falls out of the machine randomly, allotting capital cases over the seven judges until all seven judges are assigned a capital case so no one trial judge gets more capital cases than any other…. The District Attorney *does not* have input as to how the balls fall out of the hopper. The majority finds a violation of *Simpson* because the District Attorney knows which judge is left when there is one ball left in the hopper and the District Attorney has more than one capital case for random allotment. I fail to see how this simple knowledge of what judge is left amounts to a violation of random allotment.

802 So.2d at 1281.

defendant's case had been randomly allotted to one of the remaining ten Judges. Furthermore, a witness for the Clerk of Court's office testified no one from the District Attorney's office had ever attempted to figure out which case had been allotted to whom or to inquire which Judges remained in the allotment pool. *Id.* Finding the District Attorney's office had no "direct role in the allotment procedure in violation of *Simpson* and *Rideau,*" this Court further found respondent had shown no "actual prejudice to his due process rights." *Id.* at 979. Thus, no basis for ordering re-allotment existed. *Id.*

This Court's most recent and fullest examination of the due process implications of allotment in criminal cases came in *State v. Cooper,* 10-2344 (La. 11/16/10), 50 So.3d 115, in which this Court upheld an allotment system which defendants challenged both on due process grounds as articulated in *Simpson* and as an alleged violation of La. Dist. Ct. R. 14.0. In *Cooper,* the Fifteenth Judicial District's allotment system contained multiple criminal tracks for each of the district's three parishes, and each division of court within that parish was randomly assigned on one of the criminal tracks for specified period of time. *Id.* at 121-23. Notably, the date of a criminal offense determined the allotment of the case to a particular track, and thus division of court, in two of the parishes at issue.

La. Dist. Ct. R. 14.0, originally enacted in 2002 and amended in 2010, establishes a uniform rule for the random allotment of criminal cases, providing in pertinent part:

> (a) The clerk of court shall randomly allot all criminal cases, unless an exception is established by law or these Rules. The method of random allotment established by each district court, or by each parish within a district, where applicable, is described in Appendix 14.0A....

This Court, examining the issue of allotment in light of this rule for the first time, upheld the District Court's finding the system at issue complied with La. Dist. Ct. R. 14.0, noting:[4]

> **Our inquiry here is not to determine whether the district judges selected the "best" or "easiest" method of allotting criminal cases.** Our focus here is only on whether the [allotment system] which was adopted violates the law. We have established a framework in the uniform rules whereby district judges may tailor their case allotment plans in ways that will take into consideration the unique characteristics of their judicial district and the resources available to them. In our goal of ensuring due process is provided to litigants, **we have never required an allotment system which was purely random.**

*Id.* at 126 (emphasis added).

Rather than requiring a perfectly random allotment system, this Court examined and synthesized *Simpson* and *Reed* to hold "a rotation or allotment system is not acceptable if the event which triggers application of the system is dependent upon an action taken by the district attorney." *Id.* at 124. Applying this rule to the present case, we find the allotment procedure at issue is random and not dependent upon an action taken by the District Attorney. The District Attorney has no input as to what Judge is selected for any particular date, and judicial assignment is made based on the earliest date of the charged offense, which is **driven by the defendant's conduct**.

Although the State concedes the allotment procedure at issue could be manipulated under certain circumstances, we note virtually **every** allotment system is susceptible to manipulation. As Judge Bonin aptly states in his dissent from the Court of Appeal's decision in *Nunez*, the District Attorney's "vast prosecutorial authority" makes "any random allotment system vulnerable to a district attorney's 'manipulation' because he can make so many choices which affect the allotment,

---

[4] This Court also affirmed the District Court's finding that one limited aspect of the allotment system, allowing the prosecutor to **elect** to bring a felony to the same track in which a defendant already had a pending felony and thus select the presiding Judge, violated La. Dist. Ct. R. 14.0 and the requirements of *Simpson*. *Id.* at 126.

including refusal to prosecute, joinder of offenses, joinder of defendants, subsequent joinder of a co-defendant after allotment, and on and on." 174 So.3d at 117. *See* La. Code Crim. Pro. art. 61.[5]

Although not impervious to manipulation by a determined and unethical prosecutor, we find the allotment system at issue "adequately minimizes the risk of docket manipulation by either side." *State v. Coleman*, 96-1768 (La. 7/10/96), 677 So.2d 435 (per curiam). Unlike in *Reed,* where the District Attorney could routinely file bills of information in a particular order to ensure certain judicial assignments, or in *Payne*, where the prosecutor could file an unchecked motion for a particular trial date, here, the prosecutor is constrained by the **defendant's** conduct in selecting the date of the earliest charged offense. Thus, the allotment procedure at issue ensures Judge selection is driven by a random process anchored in a fact-based allegation of the date of the crime, rather than vested in the ordinary control of the District Attorney. We find all defendants have a right to a fair trial in a fair tribunal, but defendants are not denied due process simply because an allotment system is not perfectly random. As aptly stated by this Court in *Cooper*:

> [D]ue process does not entitle a criminal defendant to selection of the manner in which the judge of that tribunal is designated. A criminal defendant does not have the right to have his case heard by a particular judge, does not have the right to have his judge selected by a random draw, and is not denied due process as a result of an error in a particular judge's selection unless he can point to some resulting prejudice.

50 So.3d at 131 (citing *Sinito v. United States,* 750 F.2d 512, 515 (6th Cir. 1984), and cases cited therein).

An allotment procedure does not violate due process principles or the requirements of La. Dist. Ct. Rule 14 by merely being *susceptible* to manipulation. To hold otherwise would have far-reaching consequences, as numerous

---

[5] La. Code Crim. Pro. art. 61 provides: "Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."

jurisdictions in this State use date-of-arrest, date-of-offense, or other date-based systems which could conceivably be manipulated by a bad faith actor.[6] Thus we decline to adopt such a burdensome and untenable rule.

Where an allotment system is sufficiently random and does not vest in the District Attorney the routine ability to select Judges, the burden is on the defendant to show some actual manipulation or resulting prejudice in his particular case. Here, we find the allotment procedure is sufficiently random and not dependent on the District Attorney's actions. Therefore, our next inquiry is whether defendants can point to some actual manipulation or resulting prejudice caused by the allotment system as applied in their cases. This Court finds defendants failed to present any evidence of such manipulation or prejudice during their opportunities to do so at their respective hearings on the motions to quash and/or re-allot. Indeed, as noted by Judge Bonin in his dissent in *Brown,* counsel for Tyrone Brown "virtually stipulates at the contradictory hearing that the district attorney did not engage in misconduct nor attempt to manipulate the allotment system."[7] *Brown,* 174 So.3d at 102.

If the dates selected by the District Attorney were found to be unreasonable, then one might be able to draw an inference the District Attorney manipulated the system in this case. However, defendants have not shown the dates selected by the

---

[6] For example, the First, Second, Sixth, Twelfth, Fourteenth, Fifteenth, Nineteenth, Twenty-Second, and Fortieth Judicial Districts all rely on a date-of-offense based system to some extent. Other Judicial Districts rely on date-of-arrest or other date-based systems, and many Judicial Districts require random allotment without specifying a method in the local rules. La. Dist. Ct. Rules Appendix 14.0A (effective January 1, 2016).

[7] Counsel for Brown states at the hearing:

> MS. PASQUERELLA: Well, I'm not saying that they sat down and said "How do we get this case in Section F;" I'm not saying that, judge. I'm saying that for whatever reason they chose a date that is based not in anything that they have given me in Discovery [sic] and not anything that their complainant has said. So if they are alleging that acts occurred on dates where they have no information to say that those acts occurred and by doing that they are, they may be manipulating the system but I don't have any reason to believe that they are…

> Transcript of Motion Hearing, January 5, 2015, p. 10.

District Attorney to be unreasonable. In Brown's case, the acts charged in the indictment are alleged to have occurred between August 1, 2012, and September 19, 2014. According to Brown's arrest warrant, dated September 19, 2014:

> Brown acknowledged he understood his rights and signed waiving his Miranda Rights against self-incrimination to make a statement to the detective. Mr. Brown admitted that the sexual incidents involving the ten year old female victim started two years ago when the victim was eight years old and all of the incidents occurred in Orleans parish.

The victim turned eight on August 9, 2012. The State avers its internal policy is to use the first of the month when specifying date ranges where an exact time range is uncertain. Given the youth of the victim and the strong possibility neither party would recall exactly when the alleged crimes occurred, the State's specification of a date a mere week before the victim's eighth birthday is eminently reasonable. Furthermore, the State's policy of selecting the first day of the month when an exact date is uncertain underscores the District Attorney is not attempting to manipulate the system in the matters presently before us, as this policy is applicable to all cases where the date of the offense is unknown.

In *Nunez,* the earliest date alleged in the indictment is found at count one, namely Brandon Liccardi's charge of human trafficking between July 1, 2012, and August 31, 2012. A transcript of the victim's statement was entered into the record under seal, and our review of this transcript supports the reasonableness of this date range. The beginning date of July 1, 2012, is also consistent with the District Attorney's stated internal policy of selecting the first date of the month. Far from being arbitrary, the dates selected by the District Attorney in these cases are well-supported and highly reasonable considering the evidence on record. None of the defendants have put on any evidence the District Attorney has engaged in manipulation in their cases. Likewise, none of defendants have specified or given evidence for any prejudice which will result from their respective judicial allotments, having been unable to even speculate as to why the District Attorney

would want the particular Judges assigned or as to any potential harm caused by the procedure at issue or by the selection of these particular Judges. Thus, we find defendants' challenge of their case allotments on constitutional and statutory bases fails.

## DECREE

For the foregoing reasons, we reverse the decisions of the Court of Appeal granting defendants' motions to quash allotment and ordering re-allotment in these cases, and we reinstate the trial Judges' denials of said motions. Otherwise, the decisions of the Court of Appeal are affirmed. These cases are remanded for further proceedings consistent with this opinion.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED.**

01/27/2016

# SUPREME COURT OF LOUISIANA

## NO. 2015-KK-1473

## STATE OF LOUISIANA vs. ERIK NUNEZ

### CONSOLIDATED WITH

## STATE OF LOUISIANA vs. BRANDON LICCIARDI

### CONSOLIDATED WITH

## NO. 2015-KK-1486

## STATE OF LOUISIANA vs. TYRONE BROWN

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FOURTH CIRCUIT, PARISH OF ORLEANS*

**Weimer, J.**, dissenting.

I respectfully dissent.

At issue in this matter is the integrity of the criminal justice system and the justified concern that, when a judge is selected to preside over a case, the justice system is fair to both the state and the accused. It is undisputed that the district attorney's office knows what judge will hear a case if that office picks a certain date. Counsel for the district attorney's office admitted at oral argument that the system of allotting judges at Criminal District Court for the Parish of Orleans can be manipulated by the district attorney's office. Counsel further submitted that if the ability to manipulate the system is the determining factor under the law, then the district attorney's office should not prevail. That is, indeed, the law and, thus, the district attorney's office should not prevail.

The district attorney's argument is essentially that any allotment system can be manipulated; therefore, there is no need to take corrective action for the system here. However, barriers to manipulation by either the state or the accused must exist, else fairness is replaced by mere faith that the system will not be manipulated.

After the majority recounts a line of cases sufficient to demonstrate a *jurisprudence constante* rule that defendants facing criminal charges are guaranteed by due process to a random allotment system of judges, the majority nevertheless retreats from the equally established rule that defendants need not show actual manipulation of the allotment system. The rule, instead, as this court explained in **State v. Reed**, 95-0648, p. 1 (La. 4/28/95), 653 So.2d 1176, 1176, is that if the system can be shown to "invite[] manipulation of allotments" by the district attorney's office, then defendants are "entitled to enforcement of the court [random allotment] rule without proving *actual* manipulation in [their] particular case[s]."

The majority traces back the recognition that due process requires random allotment to at least this court's ruling in **State v. Simpson**, 551 So.2d 1303 (La. 1989) (on reh'g). "To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned." **Simpson**, 551 So.2d at 1304 (footnote omitted). The majority does not, however, trace these due process cases forward. In addition to recently citing both **Simpson** and **Reed** favorably in **State v. Cooper**, 10-2344, p. 10 (La. 11/16/10), 50 So.3d 115, 124, this court has also cited **Simpson** and **Reed** in **In re Elloie**, 05-1499, p. 23 n.21 (La. 1/19/06), 921 So.2d 882, 898 n.21, in which this court disciplined a judge for misconduct which included *inter*

2

*alia* "violat[ing] the rules regarding the random allotment of cases." Without even reviewing the lower courts' reliance on both **Simpson** and **Reed**, the lineage from this court as just recounted has stood unbroken for approximately 27 years and easily qualifies as "a long line of cases following the same reasoning within this state" and "forms *jurisprudence constante*." See **Doerr v. Mobil Oil Corp.**, 00-0947, p. 13 (La. 12/19/00), 774 So.2d 119, 128.

Apparently attempting to avoid the recognition that the majority is actually overruling this line of jurisprudence, the majority undertakes various efforts to attempt to distinguish the instant case. The majority's efforts are inconsistent, at best. For instance, the reader is told at the outset that the issue to be resolved is: "This writ concerns the allotment system of criminal cases in Orleans Parish Criminal District Court <u>when the date of the offense is uncertain</u>." **State v. Nunez c/w State v. Licciardi c/w State v. Brown**, 15-1473, 15-1486, slip op. at 1 (emphasis added). Later the reader is told that there is no uncertainty; in contrast, "<u>the defendant's conduct drives the date of offense listed on the indictment</u>." **Nunez**, slip op. at 9 (emphasis added).

More troubling is the contradiction in recognizing that the district attorney's office has vast discretion in formulating the date indicated on charges, while steadfastly insisting that "the prosecutor is constrained by the **defendant's** conduct in selecting the date of the earliest charged offense." **Nunez**, slip op. at 12. The majority attempts to reconcile this contradiction by citing a putative "policy," by which it is allegedly "the State's policy of selecting the first day of the month when an exact date is uncertain." **Nunez**, slip op. at 14. This "policy" is not mandated by any statute or court rule. Therefore, not only is this "policy" merely discretionary and

subject to change at any time, but assuming its existence only underscores that the ability to manipulate the system is afforded to the prosecutor.

While the majority recognizes the possibility of a "determined and unethical prosecutor" (**Nunez**, slip op. at 12), the majority is quick to dismiss the notion that defendants are entitled to a reallotment to judges other than those which have resulted from the dates on charges inscribed by the district attorney's office. However, according to the majority's account, an "unethical prosecutor" need not be very "determined" to manipulate the allotment system. As the majority confirms, the policy of the district attorney's office of using the beginning of the month in charges for which a crime occurs over a span of time is merely an "internal" guideline. **Nunez**, slip op. at 14.

Although the district attorney's "internal policy" is discretionary, the majority's reliance on it does not aid the notion that the instant cases have been randomly allotted. Rather, and at most, the situation appears to be that a defendant's alleged crime provides a general timeframe, but the district attorney's office chooses the specific date(s) indicated on the charges. The record irrefutably establishes that from the district attorney's office's choice of date(s), the selection of a particular judge follows. That is not random allotment, especially in light of the fact of record that the assignment of a judge for a specific date is known to the district attorney's office.[1]

Also, because the "policy" is entirely discretionary, there is no indication that there are any checks and balances on prosecutors' implementation of the "policy." The lack of checks and balances in the putative "policy" underscores the wisdom of this court's prior ruling that if the system invites manipulation of allotments by the

---

[1] By way of illustration only, and not suggesting a requirement, one possible way this unfortunate situation could be remedied is by having any case for which criminal activity occurred over a range of dates to be assigned to a separate track for random allotment within that track.

4

district attorney's office, then defendants are entitled to enforcement of a random allotment rule without proving that the district attorney's office has actually manipulated the system. See **Reed**, 95-0648 at 1, 653 So.2d at 1176. I believe it is a fair reading of **Reed** to say that **Reed** champions a standard whereby respect for the judicial system is directly proportional to its fairness to all. I believe it is also fair to say that **Reed** also indicates that any procedure, whereby the district attorney is allowed to figuratively place his thumb on the scales of justice as it concerns the allotment of cases, fails to satisfy that standard. While I do not attribute any manipulation to this district attorney's office in this case, the law, as articulated by this court, is that it is only the possibility of manipulation which is sufficient to result in an allotment being overturned.

The majority's further use of the discretionary "policy" is significant, in that it reveals that the majority is tacitly overruling **Reed** and the other cases from this court's *jurisprudence constante* on random allotment. Specifically, while the rule under the **Simpson** and **Reed** line of cases has been that no actual manipulation need be shown, the majority now uses the discretionary "policy" to launch into an analysis of whether defendants have shown actual prejudice. In support of this inquiry, the majority relies on **Cooper**, *supra*. In **Cooper**, this court stated that a defendant "is not denied due process as a result of an error in a particular judge's selection unless he can point to some resulting prejudice." *Id.*, 10-2344 at 20-21, 50 So.3d at 131. However, this statement was made in the context of defendant's argument, which the court described in these terms: "He argues there is no rational basis for failing to randomly allot this case as he requested, *i.e.* by a totally random system" and "there is no suggestion of the district attorney's complicity in the process leading to the assignment

5

of this case to the trial judge and no basis for the inference that the state was in any way involved in that process." ***Id.***, 10-2344 at 20-21, 50 So.3d at 131.

The absence of any suggestion that the district attorney's office could manipulate the system is critically important for understanding the statement in **Cooper** regarding the need to show prejudice. The court observed that the defendant "failed to show in what way the manner in which his case was allotted resulted in a tribunal less than fair and impartial." ***Id.***, 10-2344 at 21, 50 So.3d at 131. That is, the defendant failed to adduce affirmative proof of prejudice. However, the court did not confine its inquiry there. The court also asked whether the defendant made any "suggestion of the district attorney's complicity in the process leading to the assignment of this case." ***Id.*** This latter inquiry was essential, because as this court ruled in **Reed**, when the district attorney can manipulate the system, there is no need to show actual prejudice. Stated simply, when the district attorney can manipulate the system, prejudice is assumed. <u>See</u> **Reed**, 95-0648 at 1, 653 So.2d at 1176. The court's inquiry in **Cooper** shows that it still considered the rule in **Reed** to be valid. Indeed, before the whole inquiry just described, the court in **Cooper** explained: "Synthesizing the rules of **Simpson** and **Reed**, we hold that a rotation or allotment system is not acceptable if the event which triggers application of the system is dependent upon an action taken by the district attorney." **Cooper**, 10-2344 at 10, 50 So.3d at 124.

I believe that it is imprudent to depart from this court's prior *jurisprudence constante* by now requiring defendants to show actual manipulation of a random allotment system, when these defendants have shown that the system is eminently susceptible to manipulation. This court should not depart so easily from reasoning that protects due process, which is constitutionally guaranteed. <u>See</u> La. Const. art. I,

§ 2 ("No person shall be deprived of life, liberty, or property, except by due process of law."); and La. Const. art. I, § 1 ("The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state."). Recalling that the majority's departure now foists proof of actual manipulation on defendants, the majority compounds its erroneous reasoning (and the attending due process infirmities) by deciding this case without a remand to allow defendants to marshal evidence under the standards the majority has now announced. In legal terms, the majority's ruling has changed the substantive due process guarantees that have been long-recognized, and has done so in a way that deprives the defendants of procedural due process. See **State v. Griffin**, 14-1214, 14-1238, p. 5 and n.8 (La. 10/14/15), ___So.3d___, ___ and n.8 (noting that procedural due process requires notice and an opportunity to be heard, and "[d]ue process also consists, of course, of substantive rights."). In non-legal and admittedly colloquial terms, because the rules of the game have been changed after the game, the game should be replayed to ensure defendants will be afforded an opportunity to fully participate under the new rules.[2] Nevertheless, if indeed prejudice need be shown, then it is suggested that there is proof of prejudice to the perceived integrity and fairness of the system when a prosecutor is capable of manipulating the allotment.

To conclude, where the integrity of the criminal justice system has been placed at issue as it has in these consolidated cases and the district attorney's office is allowed to remain in a position where it admittedly can manipulate the allotment of judges, confidence in the integrity of the system will be eroded. While there is only one step, and a very preliminary step, of the criminal justice system at issue in these

---

[2] The record also reflects that local rules of court enacted *en banc* were simply not followed in the allotment process.

cases, sadly, the majority has missed an opportunity to demonstrate that there is no aspect of the system that should not be safeguarded from manipulation and unfairness. Thus, I respectfully dissent.

01/27/2016

SUPREME COURT OF LOUISIANA

NO. 2015-KK-1473

STATE OF LOUISIANA VERSUS ERIK NUNEZ

CONSOLIDATED WITH

STATE OF LOUISIANA VERSUS BRANDON LICCIARDI

CONSOLIDATED WITH

NO. 2015-KK-1486

STATE OF LOUISIANA VERSUS TYRONE BROWN

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**Hughes, J., dissents and assigns reasons.**

This case is not about right or wrong, guilt or innocence, the burden of proof, evidence, the heinous nature of the crime, the district attorney's discretion to charge whatever crime whenever he deems appropriate, "other crimes" where a certain date is known, or fraud or bribery committed by participants in the system.

This case is about the integrity of the judicial system and the image of this court as the guardian of that integrity.

The state admits the Orleans Parish allotment system can be manipulated. Its practice of going to the first of the month when a range of dates is involved in order to be inclusive is questioned by the case where the victim first indicated the incident occurred in March or maybe the middle of 2012. The state went with July 1st. Why would March-June be excluded as a possible period when crime occurred?

District Attorney is the toughest job in the system. The fact that in Orleans Parish the state has the ability to manipulate which judge a case is allotted to is not

an advantage the state needs or should wish to be perceived as having. It is inimical to the respect the district attorney should be accorded.

The integrity of the system and the faith of the people in that system are more important than the particulars of any one case. This case will be noted by every attorney, teacher, law enforcement officer, and a great deal of the public. Doubt in the fairness of the system and the ability of a party to legally manipulate the system cannot be tolerated. I would affirm the court of appeal.

01/27/2016

SUPREME COURT OF LOUISIANA

NO. 2015-KK-1473

STATE OF LOUISIANA VERSUS ERIK NUNEZ

CONSOLIDATED WITH

STATE OF LOUISIANA VERSUS BRANDON LICCIARDI

CONSOLIDATED WITH

NO. 2015-KK-1486

STATE OF LOUISIANA VERSUS TYRONE BROWN

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**Crichton, J., additionally concurs and assigns reasons:**

I concur in the majority decision. I write separately to emphasize that due process requires a "neutral and detached judge in the first instance." *Concrete Pipe & Prods. Inc. v. Constr. Laborers Pens. Trust*, 508 U.S. 602, 617 (1993) (quotation omitted). In my view, the allotment system at issue in this case could raise concerns about impartiality. However, the vague, unspecified, and unverified concerns these defendants raise are insufficient to deprive them of a "neutral and detached judge" at trial and therefore, insufficient to rise to the level of a constitutional violation under the facts presented. *See State v. Coleman*, 1996-1768 (La. 7/10/96), 677 So. 2d 435 (allotment system must "adequately minimize the risk of docket manipulation by either side").

Moreover, the allotment procedure at issue does not violate Rule 14.0 of the La. District Court Rules or the Orleans Parish Criminal District Court method of allotment in set forth in Appendix 14.0A. As the majority points out, defendant Nunez in fact conceded that the method of allotment set forth in Appendix 14.0A

1

fulfills the random allotment requirement. And as to the defendants' argument that the application of the unwritten rule in these circumstances violated Rule 14.0, no party has argued that they lacked notice or did not understand the process.

Importantly, the defendants who fall under this allotment system are not without remedies in the event a judge demonstrates actual bias. For instance, the defendants may file a motion for recusal specifying reasons therefor. La. C.Cr.P. art. 671, *et seq.* *See also*, *e.g.*, *United States v. Pearson*, 203 F.3d 1243, 1261 (10th Cir. 2000) (explaining alternatives to finding judicial assignment system unconstitutional). The defendants can also seek appellate review of evidentiary or other judgments that the trial judge renders in the course of pre-trial and trial proceedings in the event they disagree with those rulings.

Finally, I emphasize that the office of the district attorney has "the responsibility of a minister of justice and not simply that of an advocate." Model Rules of Prof'l Conduct R. 3.8 cmt[1] (Am. Bar. Ass'n 1983). The United States Supreme Court has noted:

> The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935).

Indeed, this Court has stated that the office of the district attorney is a "quasi-judicial" one, and the district attorney "represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice . . . ." *State v. Tate*, 171 So. 108, 112 (La. 1936). As such, the district attorney should seek to

2

uphold the integrity of the judicial process and ensure he is beyond reproach regarding any potential manipulation of the allotment system. It is my view that the district attorney in this case, together with the judges of the Criminal District Court, should reexamine the Orleans Parish system in cases involving multi-count indictments with uncertain offense dates, first, to make certain that there is no reasonable potential for manipulation, and second, to ensure the public's confidence in a random and fair allotment system.