# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2022 CA 0990

### PONTCHARTRAIN NATURAL GAS SYSTEM, K/D/S PROMIX, L.L.C., AND ACADIAN GAS PIPELINE SYSTEM

### VERSUS

### TEXAS BRINE COMPANY, LLC

Judgment Rendered: **MAR 1 6 2023**

Appealed from the
23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Docket Number 34,265

Honorable Thomas J. Kliebert, Jr., Judge Presiding

\*\*\*\*\*

| | |
|---|---|
| Martin A. Stern<br>Leigh Ann Schell<br>Raymond P. Ward<br>New Orleans, Louisiana | Attorneys for Appellee/Defendant<br>Occidental Chemical Corporation |
| Kathy Patrick<br>Laura Kissel Cassidy<br>Samuel W. Cruse, III<br>Houston, Texas | |
| James M. Garner<br>Leopold Z. Sher<br>Peter L. Hilbert, Jr.<br>Martha Curtis<br>Jeffrey D. Kessler<br>New Orleans, Louisiana | Attorneys for Appellant/Defendant<br>Texas Brine Company, LLC |
| Robert Ryland Percy, III<br>Gonzales, Louisiana | |
| Travis J. Turner<br>Gonzales, Louisiana | |

\*\*\*\*\*

BEFORE: HOLDRIDGE, PENZATO, AND WOLFE, JJ.

Penzato, J., concurs

**WOLFE, J.**

Texas Brine Company, LLC, seeks review of a trial court judgment rendered on March 25, 2021, in favor of Occidental Chemical Corporation ("Oxy"). That judgment dismisses Texas Brine's petition to annul an appellate court judgment rendered by this court on July 1, 2019, in docket number 2018 CA 0241, which Texas Brine maintains was not randomly allotted as required by Louisiana law. For the reasons that follow, we vacate in part and affirm in part.

## BACKGROUND

Over ten years ago, on August 3, 2012, a sinkhole developed near Bayou Corne in Assumption Parish. The litigation that arose out of the sinkhole-related disputes involved arbitration demands, along with numerous tort and contract claims in direct actions by companies owning or operating pipelines that were damaged by the sinkhole, as well as incidental actions, between Texas Brine, which operated a brine production well, and Oxy, the owner of the land where the sinkhole occurred. One of the many contested issues was whether one of the contracts (known as the "salt lease") between Oxy's predecessor and Texas Brine had been extinguished by confusion.

This court rendered a judgment regarding the salt lease confusion issue in three pipeline cases that were consolidated by this court's order on September 20, 2018, and decided on July 1, 2019, **Pontchartrain Natural Gas System v. Texas Brine Co., LLC**, 2018 CA 0241, and **Crosstex Energy Services, LP v. Texas Brine Co., LLC**, 2018 CA 0796, consolidated with and into **Florida Gas Transmission Co., LLC v. Texas Brine Co.**, 2018 CA 0075. See **Florida Gas Transmission Co., LLC v. Texas Brine Co., LLC**, 2018-0075 (La. App. 1st Cir. 7/1/19), 285 So.3d 1093, 1101, writs denied, 2019-01124 (La. 7/17/19), 277 So.3d 1180 and 2019-01405 (La. 11/12/19), 282 So.3d 225. It is this judgment that Texas Brine now attacks as a nullity.

2

On February 24, 2020, Texas Brine filed a petition to annul various judgments issued by this court, including the consolidated Pontchartrain pipeline case in docket number 2018 CA 0241, which had vacated the trial court's judgment granting Texas Brine's motion for partial summary judgment regarding the termination of the salt lease by confusion.[1] Texas Brine sought the annulment based on this court's alleged failure to randomly allot all appeals in accordance with the amended version of La. R.S. 13:319, effective August 1, 2018, arguing that the judgment in docket number 2018 CA 0241 was obtained by an "ill practice." Prior to the amendment of La. R.S. 13:319, this court's internal rules provided that the first appeal filed in a trial court proceeding which generated more than one appeal was randomly allotted, upon the filing of the appellant's brief, to a three-judge panel with a primary judge designated as the writing judge. After that initial allotment, pursuant to a longstanding practice of allotment used by this court, every other appeal arising out of the same trial court proceeding was allotted to a three-judge panel that included the primary writing judge from the first appeal – informally known as the "writing-judge rule."

The appeal in docket number 2018 CA 0241 was lodged and assigned its appellate court number for this court on February 23, 2018. The appellant's brief in 2018 CA 0241 was filed on April 2, 2018; thus, the appeal in 2018 CA 0241 was randomly allotted to a three-judge panel on April 2, 2018, before the effective date of the amended version of La. R.S. 13:319. Louisiana Revised Statute 13:319 provides for the assignment and allotment of cases in courts of appeal. Prior to the legislative amendment by La. Acts 2018, No. 658, § 1, La. R.S. 13:319 provided that "[e]ach civil and criminal **proceeding** and each application for writs shall be

---

[1] This court's July 1, 2019 opinion vacated the trial court's judgment finding that the salt lease had been terminated by confusion in all of the consolidated pipeline cases. See **Florida Gas Transmission Co., LLC**, 285 So.3d at 1101. This appeal, however, concerns only one of the consolidated pipeline cases in **Pontchartrain Natural Gas System v. Texas Brine Co., LLC**, 2018 CA 0241.

randomly assigned by the clerk, subject to the direct supervision of the court." (Emphasis added.) By La. Acts 2018, No. 658, § 1, the Legislature amended La. R.S. 13:319 to change the word "proceeding" to "appeal," thus now providing that "[e]ach civil and criminal **appeal** and each application for writs shall be randomly assigned by the clerk, subject to the direct supervision of the court." (Emphasis added.)

The Legislature also enacted Section 2 of La. Acts 2018, No. 658, creating La. Code Civ. P. art. 2164.1, effective August 1, 2018, specifying that, "[t]he provisions of R.S. 13:319 shall be applicable to assignment of appellate panels." Following the enactment of Act 658, this court reviewed and amended its internal rules, effective July 10, 2019, as specifically codified on August 9, 2019, to clarify that each appeal is randomly allotted and a primary writing judge is designated, regardless of prior appeals arising from the same trial court proceeding bearing the same trial court case number. See Louisiana First Circuit Court of Appeal, Internal Rule 2.3d(1)(c).

Oxy responded to Texas Brine's nullity action by filing peremptory exceptions raising the objections of no cause of action and peremption and, alternatively, a motion for summary judgment.[2] Oxy argued that the judgment Texas Brine sought to annul arose from an appeal, docket number 2018 CA 0241, which was allotted prior to the enactment of the amended version of La. R.S. 13:319, and the Legislature did not make the amendment retroactive. Oxy further argued that allotting subsequent appeals in a case according to the random allotment of the first appeal from a trial court proceeding is not an "ill practice" because it did not deprive

---

[2] Louisiana Code of Civil Procedure article 922 recognizes only three exceptions: the declinatory exception, the dilatory exception, and the peremptory exception. See La. Code Civ. P. arts. 925, 926, and 927. In this case, Oxy filed a peremptory exception pleading the objections of no cause of action and peremption. See La. Code Civ. P. art. 927. Herein, for brevity, we refer to those objections as an "exception of no cause of action" and an "exception of peremption."

4

any party of due process or fundamental fairness. The trial court granted Oxy's motion for summary judgment and sustained Oxy's exception of no cause of action, thereby dismissing all of Texas Brine's nullity claims in docket number 2018 CA 0241. The trial court overruled Oxy's exception of peremption and denied Oxy's request for attorney fees and costs.

Texas Brine appeals, basically asserting that the trial court erred in finding that Act 658, amending La. R.S. 13:319 and adding La. Code Civ. P. art. 2164.1, was to be applied prospectively only, such that this court's allotment of docket number 2018 CA 0241 was not improper at the time it was made (prior to the effective date of Act 658) or at the time it was decided (a year after the effective date of Act 658). Oxy answered the appeal, seeking modification of the trial court's ruling on peremption and requesting an award for reasonable attorney fees and costs incurred in the trial court and in this court.

## STANDARD OF REVIEW

Trial court rulings sustaining peremptory exceptions raising the objection of no cause of action are reviewed *de novo* on appeal. Likewise, summary judgments are reviewed *de novo*. **Ackel v. Ackel**, 2005-2230 (La. App. 1st Cir. 6/20/07), 2007 WL 1765561, *4 (unpublished). Thus, we must review the propriety of the judgment using the same standards applicable to the trial court's determination of the exceptions and motion. **Id.** Furthermore, because the relevant facts are not in dispute, this appeal presents a question of law, which is also subject to *de novo* review. **FIA Card Services, N.A. v. Weaver**, 2010-1372 (La. 3/15/11), 62 So.3d 709, 712. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. **Young v. State**, 2022-0477 (La. App. 1st Cir. 11/4/22), ___ So.3d ___, ___, 2022 WL 16707828, *2, writ not considered, 2022-01790 (La. 2/14/23), ___ So.3d ___, 2023 WL 1987833.

5

After our *de novo* review of the record, we conclude that Oxy's motion for summary judgment was properly granted and, thus, we decline to reach the merits of Oxy's exception of no cause of action, finding the exception is moot. See **Terry v. Schroder**, 2021-1311 (La. App. 1st Cir. 6/3/22), 342 So.3d 1003, 1006. In particular we note that Oxy's combination of an exception of no cause of action with an "alternative" motion for summary judgment in one filing is procedurally problematic, particularly because no evidence may be considered in support of an exception of no cause of action, but evidence may be introduced to support or oppose a motion for summary judgment. See La. Code Civ. P. arts. 930 and 966(A)(4); **Terry**, 342 So.3d at 1007, n. 4.

## DISCUSSION ON THE MERITS OF NULLITY ACTION

According to La. Code Civ. P. art. 2004(A), any final judgment obtained by fraud or ill practices may be annulled. The concepts of fraud and ill practices have been developed by our jurisprudence. **Power Marketing Direct, Inc. v. Foster**, 2005-2023 (La. 9/6/06), 938 So.2d 662, 670. Trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer. **Wright v. Louisiana Power & Light**, 2006-1181 (La. 3/9/07), 951 So.2d 1058, 1067. Two criteria for an action in nullity have historically been set forth in the jurisprudence: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable. **Power Marketing Direct, Inc.**, 938 So.2d at 670. The Louisiana Supreme Court has held that Article 2004 is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure that operates, even innocently, to deprive the party cast in judgment of

6

some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. **Wright**, 951 So.2d at 1067.

In **Kem Search, Inc. v. Sheffield**, 434 So.2d 1067, 1070 (La. 1983), the Court defined the required "deprivation of legal rights" in the context of ill practice allegations as "[c]onduct which prevents an opposing party from having an opportunity to appear or to assert a defense." The Court expanded this definition further in **Belle Pass Terminal, Inc. v. Jolin, Inc.**, 2001-0149 (La. 10/16/01), 800 So.2d 762, 767, holding that "a right to a fair and impartial trial is a legal right entitled to all participants in a legal proceeding." It is imperative that courts review a petition for nullity closely, because an action for nullity based on fraud or ill practices is not intended as a substitute for an appeal or as a second chance to prove a claim that was previously denied for failure of proof. **Id.** at 766. The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals. **Id.** Additionally, a judgment will not be annulled on account of fraud or ill practice in the course of a legal proceeding if the fraud or ill practice pertained to a matter irrelevant to the basis of the decision. **Id.** at 767.

With these precepts of Article 2004 in mind, we now turn to the legal issue of whether this court's internal rules are consistent with the statutory and jurisprudential requirements for random assignment of cases or whether the allotment of docket number 2018 CA 0241 amounted to an ill practice such that the judgment should be annulled. Fortunately, this court's internal rules for assignment of cases were reviewed by our supreme court, in light of the amended version of La. R.S. 13:319 and the enactment of La. Code Civ. P. art. 2164.1, in **Texas Brine Co., LLC v. Naquin**, 2019-1503 (La. 1/31/20), 340 So.3d 720, 727-728, cert. denied, 141 S.Ct. 846, 208 L.Ed.2d 422 (2020). In that opinion, the Court recognized that fundamental due process requires assignments of appellate panels to be done on a random or rotating basis, which is what the Legislature codified in La. Code Civ. P.

art. 2164.1. The Court found nothing in this court's rules for selection of panels that ran counter to the principles of random assignment from a statutory or due process standpoint. See **Naquin**, 340 So.3d at 727. The Court also noted that while the amended version of La. R.S. 13:319 requires appeals and writ applications to be "randomly assigned," the statute "does not provide any specific procedures or requirements for such random assignments." **Id**. Additionally, the Court noted that "[i]n the absence of any specific rules or procedures for random assignments, a system which results in random assignments is not invalid simply because it is possible to conceive of a more random system." **Id**. at 727-728. The Court went on to explain that our jurisprudence has never required an allotment system to be "purely random." **Id**. at 728, quoting **State v. Cooper**, 2010-2344 (La. 11/16/10), 50 So.3d 115, 126.

We note, as did the supreme court, that cases discussing random allotment have focused on whether assignments of cases are subject to intentional manipulation by either the courts or litigants. **Naquin**, 340 So.3d at 728. There is no need to invalidate an assignment system for "merely being susceptible to manipulation." **Id**., quoting **State v. Nunez**, 2015-1473 (La. 1/27/16), 187 So.3d 964, 973. The supreme court went on to find that this court's assignment system comports with statutory and jurisprudential requirements for random assignment in that it is "reasonably designed to select judges for panels in a random fashion which does not permit intentional manipulation by either the judges or the litigants." **Naquin**, 340 So.3d at 728.

We further point out that in this case, Texas Brine has failed to show any factual support of actual manipulation or prejudice that was a direct result of the manner in which this court allotted docket number 2018 CA 0241, which was consolidated with the other pipeline cases into docket number 2018 CA 0075 by order dated September 20, 2018, all in accordance with the pre-amendment version

8

of La. R.S. 13:319. Our *de novo* review leads us to conclude that Texas Brine's allegations of "ill practices" on the part of this court's random allotment of appeals are merely conclusory. There is absolutely no showing of a deprivation of Texas Brine's or any other parties' legal rights. Texas Brine failed to demonstrate how it was deprived of the fundamental opportunity to fairly present its case to this court in the appeal of docket number 2018 CA 0241 or how this court's allotment system caused or was in any way related to any adverse judgment. The record reveals that Texas Brine fully litigated docket number 2018 CA 0241 up and until the supreme court denied writs on November 12, 2019. Texas Brine is not entitled to keep "retrying" the same issues until it obtains a favorable result. The action for nullity was never intended for such a purpose. See **Johnson v. Cain**, 2008-0936 (La. App. 1st Cir. 11/14/08), 999 So.2d 51, 53, writ denied, 2009-0295 (La. 4/3/09), 6 So.3d 773. Accordingly, we find no error or abuse of discretion in the trial court's dismissal of Texas Brine's nullity action against Oxy.[3]

## ANSWER TO APPEAL

Oxy filed an answer to Texas Brine's appeal, requesting that this court reverse or vacate the trial court's denial of Oxy's peremptory exception raising the objection of peremption. Because we find that the trial court acted within its discretion and correctly dismissed Texas Brine's nullity petition filed against Oxy, we pretermit discussion of any other exceptions. Additionally, while we recognize that La. Code Civ. P. art. 2004(C) allows a trial court to award reasonable attorney fees to the party who prevails in a nullity action, the record does not contain any evidence of the amount of Oxy's attorney fees and costs associated with the nullity action. However,

---

[3] Because we cannot say that the circumstances under which the July 1, 2019 judgment was rendered show that Texas Brine was deprived of any legal rights or that the enforcement of the judgment would be unconscionable or inequitable, any further analysis of whether La. Acts 2018, No. 658 is to be applied retroactively or prospectively is irrelevant to our holding. Thus, we pretermit any classification of Act 658 as substantive, procedural, or interpretive pursuant to La. Civ. Code art. 6.

9

Oxy also requests attorney fees associated with defending Texas Brine's appeal. We find that Oxy presents a compelling argument for an award of reasonable attorney fees for successfully defending this appeal, which is duplicated in numerous other appeals currently pending before this court. Accordingly, we award Oxy $5,000.00 in attorney fees for its work on the defense of this particular appeal.

## CONCLUSION

For the reasons expressed, we vacate the portion of the trial court's March 25, 2021 judgment sustaining the peremptory exception raising the objection of no cause of action filed by Occidental Chemical Corporation as moot, and we affirm the portion of the judgment granting the motion for summary judgment filed by Occidental Chemical Corporation that dismissed Texas Brine Company, LLC's petition to annul this court's July 1, 2019 judgment rendered in docket number 2018 CA 0241 and all of its claims against Occidental Chemical Corporation. Further, we award Occidental Chemical Corporation $5,000.00 in attorney fees for successfully defending this appeal. All costs of this appeal are assessed to Texas Brine Company, LLC.

**VACATED IN PART; AFFIRMED IN PART; REQUEST FOR ATTORNEY FEES GRANTED.**